COMMONWEALTH *vs.* DANIEL VITAL.[1]

No. 12-P-845.

Plymouth. March 6, 2013. - May 31, 2013.

Present: KATZMANN, MEADE, & SULLIVAN, JJ.

*Indecent Assault and Battery. Abuse Prevention. Intimidation of Witness. Witness,* Intimidation, Privilege. *Privileged Communication. Evidence,* Privileged communication, Testimonial privilege. *Practice, Criminal,* Trial of complaints together.

At the trial of complaints charging the defendant with indecent assault and battery on a child, violation of an abuse prevention order, and intimidation of a witness, the defendant's pastor did not violate the priest-penitent privilege in disclosing the details of the defendant's communications, where the defendant communicated with his pastor not to receive religious or spiritual advice or comfort but, rather, to ask the pastor to convince the victim and her family (with whom the defendant could not communicate due to a restraining order) to settle the allegations of abuse in the church rather than in court. [671-674]

A criminal defendant failed to demonstrate prejudice so compelling that it prevented him from obtaining a fair trial arising from a District Court judge's grant of a motion to try a complaint charging the defendant with indecent assault and battery together with a complaint charging the defendant with violation of a restraining order and intimidation of a witness. [674-676]

COMPLAINTS received and sworn to in the Plymouth Division of the District Court Department on July 3 and July 25, 2008.

The cases were tried before *Christopher D. Welch,* J.

*Katherine Godin* for the defendant.

*Laurie Yeshulas,* Assistant District Attorney, for the Commonwealth.

KATZMANN, J. A District Court jury found the defendant guilty

---

[1]We are unable to consult the criminal complaint for the correct spelling of the defendant's name, as per our usual practice, because the complaint is not included in the record appendix. Instead, we have taken the defendant's name from the District Court docket.

of (1) indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B; (2) violation of an abuse prevention order, G. L. c. 209A, § 7; and (3) intimidation of a witness, G. L. c. 268, § 13B. The defendant now appeals. The principal issue before us is whether the defendant's pastor violated the priest-penitent privilege, G. L. c. 233, § 20A, when he testified as to inculpatory statements made by the defendant. See generally Mass. G. Evid. § 510 (2013). A secondary issue before us is whether joinder of the offenses for trial was proper. We affirm.

*Background.* A jury could have found as follows. In the summer of 2008, the defendant was living with the victim's grandparents. The defendant was a friend of the grandparents. The victim, who was twelve years old at the time, was also living in the grandparents' home, along with her parents and her brother.

On the evening of July 3, 2008, the victim was asleep in the living room, which is where she slept at night, and awoke to find the defendant lying on top of her. The defendant had lifted up the victim's shirt and began to pinch her breasts with his fingers and lips. The defendant then used his mouth to suck on the victim's breasts. In all, the defendant touched the victim for about twenty to twenty-five minutes. The victim, who testified at trial that she was frightened during the incident, did not speak while the defendant touched her. Once he had finished, the defendant told the victim that "this isn't fair" and "promise you won't tell anybody." After the victim agreed not to tell anyone, the defendant left the living room.

Approximately five minutes later, the victim, who was crying hysterically, ran to her mother's room and told her mother about what had just taken place in the living room. The mother then woke up the victim's grandmother and they called the police. Once the police arrived, the victim provided the police with an account of the defendant's actions in the living room. On July 7, the mother obtained a restraining order against the defendant on behalf of the victim and her family.

Shortly after this incident with the victim, the defendant met with Pastor William Mazzilli (pastor) of the Capeway Baptist Church. The defendant was a member of the pastor's church and knew that the victim's family also belonged to the church.

Before disclosing the details of the incident, the defendant first asked the pastor whether he would have to testify against the defendant if a case were to ever proceed to trial. The pastor replied that he did not think that he would have to testify. While crying, the defendant then asked the pastor to tell the victim's family that he was sorry for his actions and that he did not intend to hurt anyone.[2] The defendant went on to explain to the pastor that at the time of the incident, he was not taking his medication and that with all the pornography on television, he did not know what happened. Ultimately, the defendant believed that the parties should resolve this matter in the church, rather than through the court system, and he asked the pastor to deliver this message to the victim and her family. The defendant followed up this in-person conversation with three additional telephone conversations with the pastor in which the defendant continued to ask the pastor if he would convince the victim's family to settle the matter in the church. In particular, the defendant emphasized to the pastor that scripture dictates that Christians should not take other Christians to court; instead, they should settle all disputes in the church. After these conversations, the pastor relayed the defendant's messages to the victim's mother and grandparents. At some point, the victim also learned of the defendant's communications. The victim and her family did not change course, and the case proceeded to trial.

*Discussion.* 1. *Priest-penitent privilege.* At trial, the Commonwealth called the pastor to testify during its case-in-chief. The pastor testified as to the substance of his communications with the defendant. The defendant did not object to the pastor's testimony. On appeal, the defendant argues that in disclosing the details of his communications, the pastor violated the priest-penitent privilege. See G. L. c. 233, § 20A. Because the defendant did not object at the time the evidence was introduced, he must now demonstrate that its admission created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *McCoy,* 456 Mass. 838, 850 (2010).

It is apparent that the Legislature, in enacting the priest-penitent privilege, sought to protect penitents in their efforts to

---

[2]The pastor provided this testimony at trial. The defendant did not testify.

engage in confession and receive spiritual and religious guidance. The statute states:

> "A priest, rabbi or ordained or licensed minister of any church or an accredited Christian Science practitioner shall not, without the consent of the person making the confession, be allowed to disclose a confession made to him in his professional character, in the course of discipline enjoined by the rules or practice of the religious body to which he belongs; nor shall a priest, rabbi or ordained or licensed minister of any church or an accredited Christian Science practitioner testify as to any communication made to him by any person in seeking religious or spiritual advice or comfort, or as to his advice given thereon in the course of his professional duties or in his professional character, without the consent of such person."

G. L. c. 233, § 20A, inserted by St. 1962, c. 372. See generally Mass. G. Evid. § 510. In *Commonwealth* v. *Kebreau*, 454 Mass. 287 (2009) (*Kebreau*), the Supreme Judicial Court noted that G. L. c. 233, § 20A, is strictly construed and applies only to communications where a penitent "seek[s] religious or spiritual advice or comfort." *Id.* at 301, citing *Matter of a Grand Jury Subpoena*, 447 Mass. 88, 90 (2006).

The *Kebreau* court held that the priest-penitent privilege did not apply where the defendant, who was accused of sexually assaulting his daughters, participated in a meeting with three pastors as well as his daughters and wife. *Kebreau, supra* at 302-303. During the meeting, the defendant ultimately admitted his wrongdoing and apologized to his daughters; however, the court found that these communications were not protected by G. L. c. 233, § 20A, because the defendant did not participate in the meeting to seek "spiritual advice or comfort." *Id.* at 303. Instead, the defendant participated in the meeting to avoid the "train going right at [his] forehead," *ibid.*, in other words, to avoid criminal prosecution.

The defendant in the instant case, like the defendant in *Kebreau*, did not communicate with his pastor to receive "religious or spiritual advice or comfort," G. L. c. 233, § 20A; instead, he communicated with the pastor to ask him to convince the victim and her family to settle the allegations of abuse in

the church instead of in court. At that time, the defendant knew that the victim's family had secured a restraining order against him and that, as a result, he could not communicate directly or indirectly with the family. In addition, the pastor's testimony established that the defendant knew that his pastor was prohibited by law from disclosing certain communications by a penitent. In short, the defendant intended that his communication be protected by the priest-penitent privilege and that it skirt the restraining order. As has been noted, when the defendant first met with his pastor, he began the conversation by confirming that the priest-penitent privilege would prevent the pastor from ever disclosing the substance of their conversation. It was only after the pastor assured him that the privilege applied that the defendant explained the details of the incident with the victim and asked the pastor to relay the defendant's message to the victim and her family that they settle the assault allegations in the church rather than in court. This request did not constitute a search for spiritual advice or comfort.

A defendant may not use a third party to relay a message to a complainant who has secured a restraining order against the defendant. See *Commonwealth* v. *Collier*, 427 Mass. 385, 389 (1998); *Commonwealth* v. *Russell*, 46 Mass. App. Ct. 307, 309-310 (1999). This limitation must apply to the use of a pastor or other religious leader as the third-party intermediary. The defendant in this case, like the defendant in *Kebreau*, did not communicate with the pastor to seek religious counselling, but rather sought the pastor's assistance in an attempt to avoid the proverbial "train going right at [the defendant's] forehead," i.e., criminal charges. *Kebreau*, 454 Mass. at 303. We are to strictly construe the priest-penitent privilege and to apply it only to disclosures made when a defendant seeks religious or spiritual guidance. See *id.* at 301. A strict construction of the privilege does not encompass the strategic use of the priest-penitent privilege to circumvent and violate a restraining order. In short, it was not error, let alone a substantial risk of a miscarriage of justice,[3] for the judge to allow the pastor to testify as to his

---

[3]We also note that, at trial, the defendant had a strategic reason not to object to the pastor's testimony. As the defendant did not testify, he used the pastor's testimony as a means to relay his defense — due to his failure to take

conversations with the defendant because the conversations were not protected by the priest-penitent privilege.[4]

Moreover, even if we were to assume that the defendant's conversations with the pastor were, in fact, privileged, the defendant waived this privilege when he requested that the pastor relay the subject of their conversations to the victim's family. Cf. *Peters* v. *Wallach*, 366 Mass. 622, 627-628 (1975) ("[c]ommunications between an attorney and his client are not privileged . . . if it is understood that the information is to be conveyed to others"). See generally *Neitlich* v. *Peterson*, 15 Mass. App. Ct. 622, 626-627 (1983), citing 8 Wigmore, Evidence § 2327, at 637-638 (McNaughton rev. 1961). General Laws c. 233, § 20A, makes clear that a religious leader may not disclose the details of a conversation with a penitent without the penitent's consent. In this case, on four separate occasions — the in-person meeting and three ensuing telephone conversations — the defendant explicitly requested that the pastor disclose the subject of their conversation.

2. *Joinder*. The defendant also argues that the trial judge abused his discretion by granting the Commonwealth's motion to join the charge of indecent assault and battery with the charges of violation of a restraining order and intimidation of a witness.

Where offenses are related, "[t]he trial judge shall join the charges for trial unless he determines that joinder is not in the best interests of justice." Mass.R.Crim.P. 9(a)(3), 378 Mass. 859 (1979). "Joinder is a matter committed to the sound discretion of the trial judge." *Commonwealth* v. *Aguiar*, 78 Mass. App. Ct. 193, 198 (2010). In making this determination, the trial judge is to consider whether the offenses are related and

---

his medication and the pornography on television, he lost control of his behavior — and to convey the defendant's remorse — he was crying when he met with the pastor. Where counsel's failure to object was a reasonable tactical decision, there is no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999).

[4] Our analysis is not changed by the fact that the defendant asked the pastor whether the pastor would have to testify against the defendant in court. While the pastor replied that he did not think that he would have to testify against the defendant, it was reasonable for the pastor to expect that the defendant was seeking his counsel for spiritual guidance. The pastor could not reasonably expect that the defendant would, in fact, request that the pastor communicate on the defendant's behalf with the victim's family.

whether joinder would be unfairly prejudicial. *Id.* at 199. On appeal, we will not reverse the trial judge's decision "unless there has been 'a clear abuse of discretion.' " *Id.* at 198-199, quoting from *Commonwealth* v. *Pillai*, 445 Mass. 175, 180 (2005). "In assessing the judge's exercise of discretion, 'the test is not whether we would have made a different decision.' Instead, 'we will uphold the judge's decision unless we are convinced that no conscientious judge, acting intelligently, could honestly have taken the view [he] expressed.' " *Commonwealth* v. *Aguiar*, *supra* at 200, quoting from *Commonwealth* v. *Pillai*, *supra* at 181. On appeal, "[t]he defendant bears the burden of showing that joinder was improper." *Commonwealth* v. *Walker*, 442 Mass. 185, 199 (2004).

The defendant does not contend that the offenses are unrelated. Indeed, he concedes that the evidence of the indecent assault and battery charge would have been admissible at a separate trial on the witness intimidation and violation of the restraining order charges, in order to prove motive.[5] Instead, the defendant argues that the joinder prejudiced him by preventing him from testifying at trial. More specifically, he contends that as a result of the joinder, he could not testify in his own defense as to the witness intimidation charge for risk of being cross-examined on the indecent assault and battery charge. Moreover, he asserts that by joining the charges, the trial judge allowed the jury to assume that the indecent assault and battery had occurred based on evidence of the witness intimidation charge, namely, that the defendant tried to prevent the victim from pursuing the indecent assault and battery charge in court.

In order to secure relief on this claim, the defendant must "demonstrate[] that the prejudice from joinder was 'so compelling that it prevented him from obtaining a fair trial.' " *Id.* at 200, quoting from *Commonwealth* v. *Wilson*, 427 Mass. 336, 346-347 (1998). He cannot demonstrate sufficient prejudice by merely arguing that had the trial judge severed the multiple

---

[5]The defendant erroneously argues that evidence of the witness intimidation and restraining order violation charges would not have been admissible at a separate trial on the indecent assault and battery charge. Contrary to the defendant's assertion, this evidence would have been admissible as consciousness of guilt. See *Commonwealth* v. *Pagels*, 69 Mass. App. Ct. 607, 617 (2007). See generally Mass. G. Evid. § 1110(a) (2013).

charges, he would have had a better likelihood of acquittal at trial. *Ibid.* Similarly, "[i]t is not enough for the defendant simply to assert that he wanted to testify about some charges, but not others." *Commonwealth* v. *Allison*, 434 Mass. 670, 680 (2001). "Rather, he must make a 'convincing showing that he had both important testimony to give concerning one count and a strong need to refrain from testifying about the other count.' " *Ibid.*, quoting from *Commonwealth* v. *Williams*, 18 Mass. App. Ct. 945, 947 (1984).

The defendant has not met his burden of demonstrating that "the prejudice from joinder was 'so compelling that it prevented him from obtaining a fair trial.' " *Commonwealth* v. *Walker*, *supra* at 200 (citation omitted). Instead, he has simply put forth vague, general assertions that are unsupported by his counsel's actions at trial. For instance, while the defendant now contends that he was unable to provide valuable testimony at trial as to the witness intimidation charge, he has not made a "convincing showing that he had both important testimony to give concerning [the witness intimidation charge] and a strong need to refrain from testifying about [the assault and battery charge]." *Commonwealth* v. *Allison*, *supra* at 680, quoting from *Commonwealth* v. *Williams*, *supra*. Accordingly, given the defendant's failure to demonstrate prejudice, the trial judge did not abuse his discretion in allowing the charges to be joined.

*Judgments affirmed.*