[Cite as *McFarland v. W. Congregation of Jehovah's Witnesses, Lorain, Ohio, Inc.*, 2016-Ohio-5462.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
| --- | --- | --- |
| ELIZABETH MCFARLAND | | C.A. No.     15CA010740 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| WEST CONGREGATION OF JEHOVAH'S WITNESSES, LORAIN, OH, INC., et al. | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO CASE No.     13CV181057 |
| Appellants | | |

DECISION AND JOURNAL ENTRY

Dated: August 22, 2016

WHITMORE, Judge.

{¶1}   Defendant-Appellants, West Congregation of Jehovah's Witnesses, Lorain, Ohio, Inc. ("West Congregation"), Watchtower Bible and Tract Society of New York, Inc. ("Watchtower"), and Christian Congregation of Jehovah's Witnesses ("Christian Congregation") (collectively, "Appellants"), appeal from the order of the Lorain County Court of Common Pleas, granting a portion of Plaintiff-Appellee, Elizabeth McFarland's, motion to compel the production of certain documents.  This Court affirms in part and reverses in part.

I

{¶2}   West Congregation is one of many local Jehovah's Witnesses congregations throughout the country.  Each local congregation has members who have been elevated to serve as elders for their particular congregation.  The Bodies of Elders at each congregation have many responsibilities, including disciplining any members who have engaged in wrongful behavior.

Additionally, the Bodies of Elders receive instructions from and communicate directly with several national entities the Jehovah's Witnesses operate to provide leadership and maintain consistency among the local congregations.

{¶3}    Prior to 2001, Watchtower was responsible for disseminating literature to the Bodies of Elders at each local congregation.  Christian Congregation usurped that responsibility in 2001 and, since then, has regularly distributed to the Bodies of Elders letters instructing the elders as to the appropriate way to address various issues within their respective congregations. Additionally, Christian Congregation maintains a Service Department that is staffed with elders who serve at the national level.  Both members and elders of local congregations may call or write to elders in the Service Department to seek their guidance on a particular issue.  Service Department elders then may respond in kind, by providing guidance either over the phone or through a letter.

{¶4}    From 1997 to 2001, when she was between ten and fourteen years of age, McFarland was a member of West Congregation.  Scott Silvasy was another member of the congregation during a portion of that time period.  Appellants concede that Silvasy was disfellowshipped twice from the congregation: once between June 1995 and April 1996 and once between October 1998 and February 2000.[1]  They also concede that, at some point, "Silvasy informed an elder that, prior to his becoming one of Jehovah's Witnesses, he had a minor female touch him inappropriately."  According to McFarland, Silvasy molested her over a period of several years before she finally disclosed the abuse to her parents in 2001.  McFarland alleges that her parents told the elders at West Congregation about the abuse, but they neglected to

---

[1] When a Jehovah's Witness is disfellowshipped, he or she is no longer considered a practicing member of the faith or his or her congregation.  A person who has been disfellowshipped can later seek reinstatement.

discipline Silvasy or to report the matter and discouraged her parents from doing so. Silvasy died in February 2003.

{¶5} In 2013, McFarland brought suit against Appellants for negligence, ratification, and fraud by omission/concealment. McFarland alleged that Appellants were aware that Silvasy had previously molested a minor and was a danger to her, but failed to take measures to protect her from his abuse and ratified his conduct by responding inappropriately once she reported the abuse. McFarland sought both compensatory and punitive damages from Appellants, alleging that they acted with intentional, malicious, and/or reckless disregard for her welfare.

{¶6} After discovery commenced, McFarland served Watchtower with a request for the production of certain documents. Included within that filing was a request that Watchtower produce "ALL DOCUMENTS received by YOU in response to the Body of Elders letter dated March 14, 1997." There is no dispute that the letter in question was a letter from Watchtower to the Bodies of Elders at each local congregation, regarding child molestation, the identification of child molesters, and the steps local elders should take to protect children within the congregation from harm. The letter specifically asked the elders to supply Watchtower with reports "on anyone who is currently serving or who formerly served in a Society-appointed position in your congregation who is known to have been guilty of child molestation in the past." In her discovery request, McFarland sought the reports Watchtower received in response to its letter.

{¶7} Watchtower raised several objections to McFarland's request. After the two were unable to resolve the matter themselves, Watchtower filed a motion for a protective order. Watchtower argued, among other things, that the reports McFarland sought would not advance her case against Appellants because Silvasy never served in a "Society-appointed position." McFarland responded to Watchtower's motion, and Watchtower filed a reply. The court

ultimately determined that McFarland's request was overbroad. It also wrote, however, that any reports that actually pertained to Silvasy were relevant. Consequently, the court granted Watchtower's motion in part, but also ordered it to provide McFarland with " unredacted copies of any and all reports by the body of elders at West Congregation to Defendant Watchtower concerning Scott Silvasy * * *."

{¶8} Following the court's order, the parties once again found themselves in a discovery dispute. Of interest to this appeal, McFarland sought (1) all letters that Watchtower/Christian Congregation issued to the Bodies of Elders between January 1, 1980, and December 31, 2002, and (2) any documents Appellants had in their possession that related to Silvasy and/or herself. As to the latter, it was McFarland's position that the court, in ruling on Watchtower's motion for a protective order, had ordered Appellants to produce unredacted copies of any documents that related to Silvasy. Meanwhile, it was Appellants' position that the court had only ordered them to produce any reports that West Congregation had issued on Silvasy after receiving the March 14, 1997 letter from Watchtower. Because there were no such reports, Appellants argued that they had complied with the court's order. They opposed McFarland's discovery requests on the basis of clergy-penitent privilege, attorney-client privilege, and the First Amendment. Additionally, they challenged the scope of McFarland's requests, noting that they were not specifically tailored to the time period of her alleged abuse.

{¶9} McFarland ultimately filed a motion to compel the production of the documents she sought. Appellants opposed her motion, but also filed under seal all of the documents they identified as being at issue. McFarland then filed a reply brief. Following an in camera review of the sealed documents, the court issued its decision. The court granted McFarland's motion to compel in part and ordered Appellants to produce: (1) ten letters from the Service Department

elders at Watchtower to the Bodies of Elders at the local congregations; and (2) fifteen other documents that Appellants described as either letters or memoranda sent, received, or transcribed by West Congregation elders, Service Department elders, and non-parties to the litigation. Appellants then immediately appealed from the trial court's order.

{¶10} Appellants have appealed from the court's order with respect to nineteen of the documents it ordered them to produce. Those nineteen documents are four of the ten letters from Service Department elders to the Bodies of Elders ("the Bodies of Elders letters") and all fifteen of the remaining documents that Appellants described as either letters or memoranda. Appellants raise two assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT ERRED WHEN IT ORDERED PRODUCTION OF DOCUMENTS PROTECTED FROM DISCOVERY BY THE CLERGY-PENITENT PRIVILEGE AND THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION.

{¶11} In their first assignment of error, Appellants argue that the trial court erred when it ordered them to produce nineteen documents for purposes of discovery. Specifically, they argue that the documents are protected from discovery by virtue of either the clergy-penitent privilege or the First Amendment.

{¶12} "In general, discovery orders are reviewed under an abuse-of-discretion standard." *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13. That is because "courts have broad discretion over discovery matters." *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, ¶ 18. "However, the Supreme Court of Ohio has concluded that the issue of whether [] information sought is confidential and privileged from disclosure is a question of law that should be reviewed

de novo." *Price v. Karatjas*, 9th Dist. Summit No. 25361, 2011-Ohio-1048, ¶ 8, citing *Schlotterer* at ¶ 13. Because the issue on appeal is whether the nineteen documents that Appellants filed under seal are privileged and/or confidential, we review this matter de novo. *See Price* at ¶ 8. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

**Clergy-Penitent Privilege**

{**¶13**} R.C. 2317.02(C) codifies the clergy-penitent privilege in Ohio. The statute provides, in relevant part, that

> [a] cleric, when the cleric remains accountable to the authority of that cleric's church, denomination, or sect, [shall not testify] concerning a confession made, or any information confidentially communicated, to the cleric for a religious counseling purpose in the cleric's professional character.

R.C. 2317.02(C)(1). The clergy-penitent privilege generally may be waived either by express consent of the penitent or by operation of law under R.C. 2151.421(A)(4)(c). *Id.* Neither form of waiver applies, however, if the cleric's disclosure would violate a sacred trust, as defined in R.C. 2317.02(C)(2)(b). *Id.* The privilege "recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive [spiritual] consolation and guidance in return." *Trammel v. United States*, 445 U.S. 40, 51 (1980). Nevertheless, "being in derogation of the common law, any statutory privilege must be strictly construed against the party seeking to assert it and may be applied only to those circumstances specifically named in the statute." *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, ¶ 15. "The party claiming the privilege has the burden of proving that the privilege applies to the requested information." *Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 2008-Ohio-4333, ¶ 17 (9th Dist.).

**{¶14}** As previously noted, Appellants seek to have nineteen separate documents protected from disclosure by virtue of the clergy-penitent privilege. Four of those documents are the Bodies of Elders letters. The remaining fifteen are letters/memoranda sent, received, or transcribed by West Congregation elders, Service Department elders, and non-parties to the litigation. We consider each set of documents in turn.

The Bodies of Elders Letters

**{¶15}** The Bodies of Elders letters were drafted by Service Department elders at Watchtower and addressed to all of the Bodies of Elders on March 10, 1983; September 20, 1984; March 15, 1987; and January 15, 1990, respectively. The four letters provide instructions to elders at local congregations on a variety of topics. Appellants argue that the letters are privileged because they were "used to convey scripturally based advice, guidance, and direction from the Elders in the Service Department to the Elders serving local congregations to assist the local Elders in shepherding their membership." In support of their argument, Appellants rely upon the affidavit of Thomas Jefferson, an elder in the Service Department. In his affidavit, Jefferson averred that all Bodies of Elders letters are "strictly confidential communications." He further averred that the purpose of the letters "is to make application of the Bible-based beliefs, practices, and procedures of Jehovah's Witnesses on a wide variety of topics."

**{¶16}** As previously noted, Ohio's clergy-penitent privilege only protects "information confidentially communicated" when it is communicated to a cleric "for a religious counseling purpose in the cleric's professional character." R.C. 2317.02(C)(1). "Although the scope of the [clergy-penitent] privilege varies from State to State, * * * all States at a minimum 'require that the communications be made in private, with an expectation of confidentiality, to a minister in his or her professional capacity as a member of the clergy.'" (Internal citation omitted.) *Varner*

*v. Stovall*, 500 F.3d 491, 495 (6th Cir.2007), quoting Cassidy, *Sharing Sacred Secrets: Is it (Past) Time for a Dangerous Person Exception to the Clergy-Penitent Privilege?*, 44 Wm. & Mary L.Rev. 1627, 1645 (2003). Appellants concede that the Bodies of Elders letters are letters from one set of elders to another. Accordingly, the letters involve multiple individuals and are not an instance of any particular penitent confiding in a cleric. Nor are they responsive to any individual inquiry for religious counseling. For instance, they do not represent correspondence between an individual congregation and the Service Department, based on a specific, spiritual inquiry posed by that individual congregation. The nature of the letters causes us to question whether they are confidential communications within the meaning of R.C. 2317.02(C)(1). Even assuming that they are, however, we still cannot conclude that they were distributed for the purpose of religious counseling.

{¶17} Not every word authored or spoken by a cleric is privileged. *See People v. Bragg*, 296 Mich.App. 433, 455 (2012), quoting *Cox v. Miller*, 296 F.3d 89, 106 (2d Cir.2002) ("[A] conversation is not privileged if made 'with wholly secular purposes solely because one of the parties to the conversation happens to be a religious minister.'"). The clergy-penitent privilege "may be applied only to those circumstances specifically named in the statute." *Ward*, 128 Ohio St.3d 212, 2010-Ohio-6275, at ¶ 15. It does not protect communications made for secular purposes, even when those communications were intended to be confidential. *See id. See also Niemann v. Cooley*, 93 Ohio App.3d 81, 88-89 (1st Dist.1994). Although Appellants contend that the Bodies of Elders letters were issued for the purpose of conveying scripturally-based advice, the letters themselves are in the nature of administrative direction/instruction. They do not, by this Court's reading, seek to impart spiritual wisdom. Accordingly, even if the letters constitute confidential communications within the meaning of R.C. 2317.02(C)(1), Appellants

have not shown that they were distributed for a religious counseling purpose. *See Giusti*, 2008-Ohio-4333, at ¶ 17. Because Appellants have not shown that the letters satisfy the statutory requirements set forth in R.C. 2317.02(C)(1), the trial court did not err by ordering their production. *See Ward* at ¶ 15. We reject Appellants' argument to the contrary.

The Remaining Letters/Memoranda

{¶18} The remaining fifteen letters/memoranda that the trial court ordered Appellants to produce all post-date the four-year period of abuse that McFarland alleged in her complaint. Consistent with their filing in the court below, Appellants have described each letter/memoranda in broad terms and have given a numerical reference for each one. We have reviewed each letter/memoranda and, for ease of discussion, separately analyze each document. Although Appellants numbered the documents in reverse chronological order, we analyze them chronologically.

i. Letter Dated May 1, 2002 (#197)

{¶19} Appellants describe the May 1, 2002 letter as a one-page letter sent from a non-party to Christian Congregation's Service Department. Appellants claim that the letter is privileged because the non-party's purpose in writing it was to seek religious guidance from an elder in the Service Department. Appellants further claim that the letter is privileged because it concerns scriptural discipline.

{¶20} As noted, the clergy-penitent privilege only protects confidential communications when they are made to a cleric "for a religious counseling purpose * * *." R.C. 2317.02(C)(1). Strictly construing the privilege as we must, *see Ward*, 128 Ohio St.3d 212, 2010-Ohio-6275, at ¶ 15, we cannot conclude that the author of the May 1, 2002 letter sent the letter for the purpose of receiving religious counseling. The author did not pose any questions to the elders or request

advice of a spiritual nature. Rather, the author appears to have sent the letter to draw attention to a particular matter and to express the author's frustration with the handling of that matter. Because the letter was sent for a secular purpose, it is not protected by the clergy-penitent privilege. *See Niemann*, 93 Ohio App.3d at 88. *See also Doe ex rel. Doe v. Catholic Diocese of Rockford*, 395 Ill.Dec. 483 (2015), ¶ 56; *Commonwealth v. Vital*, 83 Mass.App.Ct. 669, 673 (2013); *Roman Catholic Diocese of Jackson v. Morrison*, 905 So.2d 1213 (2005), ¶ 116-117.

**{¶21}** Appellants also argue that the trial court erred when it ordered them to produce the May 1st letter because the letter implicates the privacy rights of third-parties to this litigation. They argue that McFarland does not have a right "to discover confidential records of non-parties in a private lawsuit." Yet, the cases upon which Appellants rely concern privileged documents. *See, e.g., Roe v. Planned Parenthood Southwest Ohio Reg.*, 122 Ohio St.3d 399, 2009-Ohio-2973, ¶ 46-52 (privileged medical records); *Wozniak v. Kombrink*, 1st Dist. Hamilton No. C-89053, 1991 WL 17213 (Feb. 13, 1991) (privileged medical records); *Doe v. University of Cincinnati*, 42 Ohio App.3d 227 (10th Dist.1988) (privileged medical records). We have already determined that the May 1st letter is not privileged, and Appellants have not argued that third-parties have similar privacy interests in unprivileged documents. *See* App.R. 16(A)(7). This Court will not undertake such an analysis on their behalf. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). As such, we reject Appellants' argument regarding third-party privacy.

ii. Letter Dated May 23, 2002 (#196)

**{¶22}** Appellants describe the May 23, 2002 letter as a one-page letter from a Service Department elder to a non-party. In the court below, they further described the letter as a response to the letter the Service Department received from the non-party on May 1, 2002.

Appellants claim that the letter is privileged because it is in the nature of scriptural assistance. According to Appellants, the letter was "provided in response to an express request for religious/spiritual guidance and counsel."

{¶23} The May 23rd letter is a response to the May 1st letter discussed above. It is not information confidentially communicated to a cleric because it is directed to a non-cleric. Further, it is not responsive to a request for religious counseling. *See* R.C. 2317.02(C)(1). We have already determined that the May 1st letter is not privileged because it was sent for a secular purpose. Even if the purpose of the May 23rd letter was to provide the author of the May 1st letter with spiritual guidance, the clergy-penitent privilege does not apply to unsolicited religious counseling. Because the author of the May 1st letter did not confide in the Service Department for the purpose of receiving religious counseling, Appellants have not shown that the Service Department's response to the letter satisfies the statutory requirements set forth in R.C. 2317.02(C)(1). *See Ward*, 128 Ohio St.3d 212, 2010-Ohio-6275, at ¶ 15. Thus, the trial court did not err when it found that the privilege did not apply to it.

{¶24} Appellants also argue that the trial court erred when it ordered them to produce the May 23rd letter because the letter implicates the privacy rights of third-parties to this litigation. Appellants have not shown, however, that third-parties have privacy rights in unprivileged documents. *See* discussion, *supra*. Because we have determined that the May 23rd letter is not privileged, we reject Appellants' argument regarding third-party privacy.

iii. Letter Dated July 11, 2002 (#195)

{¶25} Appellants describe the July 11, 2002 letter as a two-page letter from the Body of Elders at West Congregation to an elder in the Service Department. In the court below, they further described it as a response to a request for information from the Service Department.

Appellants argue that the letter is privileged because it concerns the "internal discipline of Jehovah's Witnesses," and "relays information of another party's spiritual confession to misconduct."

{¶26} As previously noted, statutory privileges must be strictly construed against the party asserting them. *Ward* at ¶ 15. The clergy-penitent privilege does not protect communications when they serve a secular purpose or are not kept confidential. *See* R.C. 2317.02(C)(1). The privilege is meant to guard "the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive [spiritual] consolation and guidance in return." *Trammel*, 445 U.S. at 51. Strictly construing the privilege against Appellants, we cannot conclude that it applies to the July 11th letter.

{¶27} The July 11th letter is an answer to an inquiry from the Service Department for certain background information. The letter is not a request for spiritual guidance, but a response sent for the purpose of aiding an investigation. Although it contains information that the Body of Elders at West Congregation learned from third-parties, it is not clear from the letter that the elders received that information by way of a request for religious counseling. Accordingly, even assuming that the letter satisfies the confidentiality component of R.C. 2317.02(C)(1), Appellants have not shown that it satisfies the statute's religious counseling component. *See Giusti*, 2008-Ohio-4333, at ¶ 17. The letter was sent for a secular purpose, so the clergy-penitent privilege does not apply to it. *See Niemann*, 93 Ohio App.3d at 88. *See also Catholic Diocese of Rockford*, 395 Ill.Dec. 483 at ¶ 56; *Vital*, 83 Mass.App.Ct. at 673; *Morrison*, 905 So.2d 1213 at ¶ 116-117. Thus, the trial court did not err when it found the privilege inapplicable.

iv. Letter Dated July 28, 2002 (#194)

**{¶28}** Appellants describe the July 28, 2002 letter as a one-page letter from a non-party elder to an elder in the Service Department. They argue that the letter is privileged because it is a confidential communication "addressing internal church disciplinary matters."

**{¶29}** By this Court's reading, the July 28th letter is entirely divorced from any request for religious counseling. Much like the July 11th letter, the July 28th letter provides certain background information relevant to an investigation. Appellants have not shown that the letter serves anything other than a secular purpose. *See Guisti* at ¶ 17. Accordingly, the trial court did not err when it found that the clergy-penitent privilege did not apply. *See Niemann* at 88. *See also Catholic Diocese of Rockford* at ¶ 56; *Vital* at 673; *Morrison* at ¶ 116-117.

v. Letter Dated August 15, 2002 (#193)

**{¶30}** Appellants describe the August 15, 2002 letter as a one-page letter from a Service Department elder to the Body of Elders at West Congregation. They argue that the letter is privileged because it was intended "to make sure that Scriptural practices were followed and that any violations of Bible-based beliefs were dealt with properly." They further argue that the letter is privileged because it relates to "the internal discipline of the Jehovah's Witnesses."

**{¶31}** As previously noted, not every word authored or spoken by a cleric is privileged. *See Bragg*, 296 Mich.App. at 455, quoting *Cox*, 296 F.3d at 106 (2d Cir.2002). Much like the July 28th letter, the August 15th letter bears no relationship to any request for religious counseling. The letter acknowledges the receipt of a different letter and requests additional, factual information from the Body of Elders at West Congregation. Appellants have not shown that the letter serves anything other than a secular purpose. *See Guisti* at ¶ 17. Accordingly, the

trial court did not err when it found that the penitent-clergy privilege did not apply. *See Niemann* at 88. *See also Catholic Diocese of Rockford* at ¶ 56; *Vital* at 673; *Morrison* at ¶ 116-117.

vi. Letter Dated November 15, 2002 (#192)

**{¶32}** Appellants describe the November 15, 2002 letter as a one-page letter from the Body of Elders at West Congregation to elders at a different congregation who are non-parties to this suit. According to Appellants, the letter is privileged because it represents a "confidential communication from one Body of Elders to another requesting spiritual guidance for several non-parties."

**{¶33}** We do not agree with Appellants' assertion that the November 15th letter amounts to a request for spiritual guidance. Upon review, the letter conveys certain background and factual information. It does not seek to elicit any response, much less a response for spiritual counseling. Appellants have not shown that the letter serves anything other than a secular purpose. *See Guisti* at ¶ 17. Accordingly, the trial court did not err when it found that the clergy-penitent privilege did not apply. *See Niemann* at 88. *See also Catholic Diocese of Rockford* at ¶ 56; *Vital* at 673; *Morrison* at ¶ 116-117.

**{¶34}** Appellants also argue that the trial court erred when it ordered them to produce the November 15th letter because the letter implicates the privacy rights of third-parties to this litigation. Appellants have not shown, however, that third-parties have privacy rights in unprivileged documents. *See* discussion, *supra*. Because we have determined that the November 15th letter is not privileged, we reject Appellants' argument regarding third-party privacy.

vii. <u>Letter Dated February 27, 2003 (#191)</u>

**{¶35}** Appellants describe the February 27, 2003 letter as a one-page letter from a Service Department elder to the Body of Elders at West Congregation. In the court below, they further described it as a letter seeking a response to a previous request for information, dated August 15, 2002. Appellants argue that the February 27th letter is privileged, but do so strictly on the basis that it was meant to remain confidential.

**{¶36}** We have already determined that the August 15th letter is not privileged. The February 27th letter essentially duplicates the August 15th letter, as it requests a response of the same type posed by the August 15th letter. It is entirely secular in nature. Indeed, Appellants have made no attempt to explain how the letter relates to a religious counseling purpose. *See* App.R. 16(A)(7); R.C. 2317.02(C)(1). Because the February 27th letter is wholly secular in nature, the trial court did not err when it found that the clergy-penitent privilege did not apply. *See Niemann* at 88. *See also Catholic Diocese of Rockford* at ¶ 56; *Vital* at 673; *Morrison* at ¶ 116-117.

viii. <u>Letter Dated June 9, 2003 (#190)</u>

**{¶37}** Appellants describe the June 9, 2003 letter as a one-page letter from a Service Department elder to the Body of Elders at West Congregation. In the court below, they further described it as yet another request for the elders at West Congregation to respond to the Service Department's August 15th letter, requesting certain information. Appellants argue that the June 9th letter is privileged because it "pertains to internal communications regarding church disciplinary matters."

**{¶38}** For the reasons set forth in our discussion of the August 15th letter and the February 27th letter, the June 9th letter is also not privileged. The purpose of the letter is entirely

secular. The clergy-penitent privilege does not apply to it because it is not a request or response to a request for religious counseling. *See* R.C. 2317.02(C)(1). Accordingly, the trial court did not err when it found that the privilege did not apply. *See Niemann* at 88. *See also Catholic Diocese of Rockford* at ¶ 56; *Vital* at 673; *Morrison* at ¶ 116-117.

    ix. <u>Letter Dated June 22, 2003 (#189)</u>

**{¶39}** Appellants describe the June 22, 2003 letter as a one-page letter from the Body of Elders at West Congregation to the Service Department. They further describe the letter as a response to an earlier request from the Service Department for certain information. According to Appellants, the letter is privileged because the Service Department "asked for [the] information in order to be able to provide religious guidance."

**{¶40}** Appellants have not argued that the June 22nd letter itself offers religious counseling. We understand their argument to be that the letter is privileged because it provides the reader with information that could, at some future point, be used to offer religious counseling. The clergy-penitent privilege, however, is not so broad in scope. It requires the communication directly at issue to have been made for the purpose of religious counseling. *See* R.C. 2317.02(C)(1). *See also See Ward*, 128 Ohio St.3d 212, 2010-Ohio-6275, at ¶ 15 (statutory privileges must be strictly construed). The June 22nd letter only sets forth certain factual information and was not sent for the purpose of requesting religious counseling or offering it to a penitent. Accordingly, the trial court did not err when it found that the clergy-penitent privilege did not apply. *See Niemann* at 88. *See also Catholic Diocese of Rockford* at ¶ 56; *Vital* at 673; *Morrison* at ¶ 116-117.

x. Letter Dated July 7, 2003 (#188)

{¶41} Appellants describe the July 7, 2003 letter as a one-page letter from a Service Department elder to the Body of Elders at West Congregation. In the court below, they further described it as an acknowledgement of receipt of the letter that the Body of Elders sent to the Service Department on June 22, 2003.

{¶42} While Appellants refer to the July 7th letter as a confidential communication, they have not explained how it pertains to religious counseling. *See* R.C. 2317.02(C)(1). Appellants have conceded that the letter is an acknowledgement of the receipt of an earlier letter. They have not offered any argument as to how the letter serves a non-secular purpose, and we decline to create one on their behalf. *See* App.R. 16(A)(7); *Cardone*, 1998 WL 224934, at *8. As such, we reject their argument that the trial court erred when it found that the clergy-penitent privilege did not apply to the July 7th letter.

xi. Letter Dated August 28, 2011 (#187)

{¶43} Appellants describe the August 28, 2011 letter as a one-page letter from a non-party to an elder in the Service Department. They argue that the letter is privileged because it "contains confession to a Service Department Elder and seeks religious guidance as to how to address confessed failings."

{¶44} As previously noted, Appellants supported their argument in the court below with the affidavit of Thomas Jefferson, an elder for the Service Department. Jefferson averred that he has served as an elder in the faith since 1981 and is "thoroughly familiar with the religious beliefs and practices of Jehovah's Witnesses, and with the Scriptural precedents for those religious beliefs and practices." He averred that "[t]he confidentiality of spiritual/religious communications between members of the congregation and elders is a foundational element of

the religious beliefs and practices of Jehovah's Witnesses." According to Jefferson, "if an elder * * * was compelled to disclose confidential information, his credibility and effectiveness as an elder, as well as the credibility and effectiveness of other elders * * *, would be adversely affected and compromised." Jefferson averred that the letters at issue here "were sent with the expectation that their content would remain private and highly confidential pursuant to the Holy Scriptures and the religious beliefs and practices of Jehovah's Witnesses."

{¶45} Having reviewed the August 28th letter, we must conclude that the trial court erred when it ordered Appellants to produce it. The letter is not secular in nature. It is a plea from an individual who seeks spiritual guidance on a particular issue from an elder in the Service Department. McFarland does not dispute that Service Department elders are clerics within the meaning of R.C. 2317.02(C)(1). Further, Appellants set forth evidence that the confidentiality of spiritual communications between congregation members and elders is of such importance that it is "a foundational element of the religious beliefs and practices of Jehovah's Witnesses." Because Appellants have shown that the August 28th letter satisfies the statutory elements of R.C. 2317.02(C)(1), we must conclude that the letter is privileged. Accordingly, Appellants need not produce it.

xii. Letter Dated October 24, 2011 (#186)

{¶46} Appellants describe the October 24, 2011 letter as a one-page letter from a Service Department elder to a non-party. In the court below, they further described it as a response to a non-party's written plea for spiritual guidance, dated August 28, 2011. Appellants argue that the October 24th letter is privileged because it "contains Scriptural assistance and religious counseling * * *."

**{¶47}** The October 24th letter is a response to the August 28th letter discussed above. We have already determined that the August 28th letter is privileged and we likewise conclude that the October 24th response to that letter is privileged. The October 24th letter is not secular in nature. It offers spiritual counseling in response to an individual's confidential request for the same. Further, Appellants set forth evidence that a cleric authored the letter and that elders, while serving as clerics, are bound by the tenets of their faith to uphold the confidentiality of such communications. Because Appellants have shown that the October 24th letter satisfies the statutory elements of R.C. 2317.02(C)(1), we must conclude that the letter is privileged and that the trial court erred by ordering its production. Accordingly, Appellants need not produce the October 24th letter.

      xiii. <u>Letter Dated May 3, 2012 (#185)</u>

**{¶48}** Appellants describe the May 3, 2012 letter as a one-page letter from a non-party to an elder in the Service Department. They further describe it as "a continuation of an on-going conversation" instituted by the non-party. Appellants argue that the letter is privileged because it is in the nature of religious/spiritual counseling and reveals Scriptural discipline.

**{¶49}** This Court has reviewed the May 3rd letter and portions of it are undoubtedly secular in nature. Were we to view the letter in isolation, we might question its overarching purpose. As Appellants have noted, however, the letter is one in an ongoing conversation. Specifically, it is a reply to the October 24th letter that the Service Department issued in response to the same non-party's August 28th letter. Because the October 24th letter represents a continuation of the ongoing, privileged communication between the non-party and the Service Department, we must conclude that it too is privileged. Accordingly, the trial court erred by ordering its production. Appellants need not produce the May 3rd letter.

xiv.  Telephone Memorandum Dated August 1, 2013 (#184)

{¶50}  Appellants describe the August 1, 2013 telephone memorandum as a one-page memorandum documenting a phone call from a non-party to an elder in the Service Department. Appellants argue that the telephone memorandum is privileged because the non-party called the Service Department for the purpose of seeking spiritual guidance and the memorandum includes the guidance given to the non-party.

{¶51}  Having reviewed the August 1st memorandum, we must conclude that it is not privileged.  First, it is not clear that the memorandum is a confidential communication.  *See* R.C. 2317.02(C)(1).  According to Appellants, the letter is a "record of a telephone call from a non-party to an Elder * * *."  They have not indicated, however, whether the elder who accepted the call transcribed the memorandum or if someone else transcribed it on the elder's behalf.  Further, the memorandum contains a section that records information received from a second individual. Appellants describe that section as recording a "discussion between an Elder in the Service Department and Watchtower's Legal Department."  Thus, the memorandum is not a direct communication from a penitent to a cleric and it is apparent that the information contained within it was shared with multiple individuals who may or may not have been elders.  Because the clergy-penitent privilege only protects confidentially communicated information, we question whether the memorandum satisfies that element of the privilege.  *See id.*  Even assuming that it does, however, Appellants still have not shown that the memorandum serves a religious counseling purpose.  *Id.  See also Giusti*, 2008-Ohio-4333, at ¶ 17.

{¶52}  It is not clear from the August 1st memorandum that the non-party who initiated the telephone call at issue in the memorandum contacted the Service Department for the purpose of receiving religious counseling.  The memorandum does include a very brief recitation of the

spiritually-motivated response that the Service Department offered the caller. It does not, however, show that the caller asked for religious counsel. The fact that a cleric responds to an individual's lament on a particular point with spiritual advice does not mean that the individual sought to elicit religious counseling. The clergy-penitent privilege stems from a penitent's desire to receive spiritual counsel, not a cleric's desire to give it. *See Trammel v. United States*, 445 U.S. 40, 51 (1980). The August 1st memorandum relays information about a particular situation and documents the actions taken in response to that information. Appellants have not satisfied their burden of demonstrating that the memorandum serves a religious counseling purpose rather than a secular one. *See* R.C. 2317.02(C)(1). *See also Niemann*, 93 Ohio App.3d at 88. *See also Catholic Diocese of Rockford*, 395 Ill.Dec. 483 at ¶ 56; *Vital*, 83 Mass.App.Ct. at 673; *Morrison*, 905 So.2d 1213 at ¶ 116-117. Thus, the trial court did not err when it found the privilege inapplicable.

{¶53} Appellants also argue that the trial court erred when it ordered them to produce the August 1st memorandum because it implicates the privacy rights of third-parties to this litigation. Appellants have not shown, however, that third-parties have privacy rights in unprivileged documents. *See* discussion, *supra*. Because we have determined that the August 1st memorandum is not privileged, we reject Appellants' argument regarding third-party privacy.

xv. Letter Dated September 15, 2014 (#183)

{¶54} Appellants describe the September 15, 2014 letter as a three-page letter from non-parties to an elder in the Service Department. Appellants argue that the letter is privileged because it "makes confessional disclosures" and "seeks Scriptural guidance and religious direction * * *."

{¶55} Having reviewed the September 15th letter, we must conclude that the trial court erred when it ordered Appellants to produce it. The letter is not secular in nature. It is a specific request for religious counseling from two individuals to an elder in the Service Department. As previously noted, McFarland does not dispute that Service Department elders are clerics within the meaning of R.C. 2317.02(C)(1). Further, Appellants set forth evidence that the confidentiality of spiritual communications between congregation members and elders is of such importance that it is "a foundational element of the religious beliefs and practices of Jehovah's Witnesses." Because Appellants have shown that the September 15th letter satisfies the statutory elements of R.C. 2317.02(C)(1), we must conclude that the letter is privileged. Accordingly, Appellants need not produce it.

**First Amendment**

{¶56} Appellants also argue that the trial court's ruling on McFarland's motion to compel violates the First Amendment because it "exposes [their] internal discipline procedures and beliefs regarding repentance, mercy, and redemption to external, secular scrutiny." Initially, we note that we need not consider Appellants' arguments in light of all nineteen documents at issue in this appeal. We have already determined that four of those documents, #183, #185, #186, and #187, are privileged. Because Appellants do not have to produce those documents, we need not consider whether their production would violate the First Amendment. Further, on appeal, Appellants have not raised a First Amendment argument with respect to two of the documents, #189 and #196. Because Appellants have not set forth a First Amendment argument with respect to those two documents, we need not include them in our discussion. *See* App.R. 16(A)(7). Finally, in the court below, Appellants failed to raise a First Amendment argument with respect to three of the documents, #188, #191, and #192. Even assuming that Appellants

could do so now via a claim of plain error, they have not attempted to do so. We, therefore, exclude the three foregoing documents from our discussion. *See Buckingham, Doolittle, Burroughs, L.L.P. v. Izaldine*, 9th Dist. Summit No. 27956, 2016-Ohio-2817, ¶ 13. We need only consider Appellants' arguments in light of the Bodies of Elders letters and the six remaining documents, #184, #190, #193, #194, #195, and #197.

**{¶57}** The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *." The Establishment Clause and Free Exercise Clause prohibit States from "enact[ing] [] laws that have the purpose or effect of advancing or inhibiting religion," or expressing a preference for any one religious denomination. (Internal quotations and citations omitted.) *Varner*, 500 F.3d at 495. The Clauses apply "to the judiciary as well as the legislature, *Kreshik v. St. Nicholas Cathedral*, 363 U.S. 190, 191 (1960), and limit[] the power of the courts to hear suits 'whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by * * * church judicatories * * *.'" *Ogle v. Hocker*, 6th Cir. No. 06-2236, 2008 WL 2224863, *3 (May 29, 2008), quoting *Watson v. Jones*, 80 U.S. 679, 727 (1871). "Courts have variously termed this restraint as the church autonomy doctrine or ecclesiastical abstention." *Ogle* at *3.

**{¶58}** "[R]eligious freedom encompasses the 'power (of religious bodies) to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *Serbian Eastern Orthodox Diocese for United States of America and Canada v. Milivojevich*, 426 U.S. 696, 721-722 (1976), quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952). *Accord Harrison v. Bishop*, 6th Dist. Lucas No. L-14-1137, 2015-Ohio-5308, ¶ 19, quoting *Tibbs v. Kendrick*, 93

Ohio App.3d 35, 41 (8th Dist.1994) ("It is well established that civil courts lack jurisdiction to hear or determine purely ecclesiastical or spiritual disputes of a church or religious organization."); *Fischer v. Archdiocese of Cincinnati*, 1st Dist. Hamilton No. C-130295, 2014-Ohio-944, ¶ 35-38. Yet, "[t]he First Amendment does not prevent courts from deciding secular civil disputes involving religious institutions when and for the reason that they require reference to religious matters." *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 431 (2d Cir.1999). *Accord Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328, 331 (4th Cir.1997), quoting *General Council on Finance and Administration of the United Methodist Church v. California Superior Court*, 439 U.S. 1369, 1373 (1978) (Rehnquist, Circuit Justice) (religious organization may be held liable in civil court for "purely secular disputes between third parties and a particular defendant, albeit a religiously affiliated organization."). "Whether a secular court may hear a tort suit despite the church autonomy doctrine turns on the availability of secular standards and the ability of a court to resolve the controversy without reference to religious doctrine." *Ogle* at *3.

{¶59} The question presently before us on appeal is strictly whether the trial court erred in ordering Appellants to produce ten unprivileged documents in response to McFarland's request for discovery. "Courts in other jurisdictions have explicitly rejected the argument that the [F]irst [A]mendment protects religious institutions from disclosing relevant, non-privileged information." *Thopsey v. Bridgeport Roman Catholic Diocesan Corp.*, Sup. Ct. of Conn. New Haven No. NNHCV106009360S, 2012 WL 695624, *11 (Feb. 15, 2012). Once the trial court determined that the documents here were not privileged, it could order their discovery so long as it found them "relevant to the subject matter involved in the pending action * * *." *See* Civ.R. 26(B)(1). That decision did not require the court to interpret or evaluate Appellants' religious

beliefs or internal governance. *See Thopsey* at *11. *See also Lopez v. Watchtower Bible and Tract Society of New York, Inc.*, 246 Cal.App.4th 566, 598-599 (2016); *Krystal G. v. Roman Catholic Diocese of Brooklyn*, 34 Misc.3d 531, 542-543 (2011); *People v. Campobello*, 348 Ill.App.3d 619, 627-631 (2004). The question of relevance was purely secular and did not require the court to delve into religious law and polity. *Compare Serbian Eastern Orthodox Diocese for United States of America* at 708-710; *Howard v. Covenant Apostolic Church, Inc.*, 124 Ohio App.3d 24, 28-29 (1st Dist.1997). Consequently, we reject Appellants' argument that the trial court violated the First Amendment when it ordered them to produce the ten documents at issue.

{¶60} Appellants also argue that the trial court's order violates Article 1, Section 7 of the Ohio Constitution. They rely upon *Humphrey v. Lane*, 89 Ohio St.3d 62 (2000), to argue that the Ohio Constitution affords broader protection than the United States Constitution with respect to the protection of religious freedoms. Appellants, however, did not develop the foregoing argument in the court below. Indeed, they failed to even cite *Humphrey* in their memorandum in opposition to McFarland's motion to compel. Moreover, they have not assigned as error on appeal that the court's order violates the Ohio Constitution. This Court declines to address an additional argument that Appellants did not raise in their captioned assignment of error or develop in the court below. *See 22 Exchange, L.L.C. v. Exchange Street Assocs., L.L.C.*, 9th Dist. Summit No. 27472, 2015-Ohio-1719, ¶ 21; *JPMorgan Chase Bank, Natl. Assn. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12.

**Conclusion**

{¶61} The trial court erred when it ordered Appellants to produce four documents: #183, #185, #186, and #187. Those four documents are protected from disclosure by virtue of the

clergy-penitent privilege. To the extent Appellants' first assignment of error pertains to those four documents, it is sustained on that basis.

{¶62} The trial court did not err when it concluded that the remaining fifteen documents at issue here are not protected from disclosure by virtue of either the clergy-penitent privilege or the First Amendment. To the extent Appellants' first assignment of error pertains to those fifteen documents, it is overruled.

Assignment of Error Number Two

THE TRIAL COURT ERRED WHEN IT ORDERED PRODUCTION OF DOCUMENTS PROTECTED FROM DISCLOSURE BY THE ATTORNEY-CLIENT PRIVILEGE.

{¶63} In their second assignment of error, Appellants argue that the trial court erred when it ordered them to produce six documents because those six documents are protected from disclosure by the attorney-client privilege. Specifically, they argue that the court should not have ordered them to disclose documents #184, #189, #190, #191, #193, and #195.

{¶64} Initially, we note that Appellants did not object to the production of documents #190 and #195 in the court below on the basis of attorney-client privilege. Appellants objected to the production of those two documents strictly on the basis of the clergy-penitent privilege and the First Amendment. "Arguments that were not raised in the trial court cannot be raised for the first time on appeal." *JPMorgan Chase Bank, Natl. Assn.*, 2014-Ohio-2746, at ¶ 12. Even assuming that Appellants could assert the privilege on appeal via a claim of plain error, they have not done so. Consequently, we will not address their attorney-client privilege argument with respect to documents #190 and #195. *See id.*

{¶65} We incorporate the standard of review set forth in Appellants' first assignment of error. Because this assignment of error likewise concerns the applicability of a privilege, the

issue is a question of law that we review de novo. *Price*, 2011-Ohio-1048, at ¶ 8. Consequently, we undertake "an independent review of the trial court's decision without any deference to the trial court's determination." *Consilio*, 2006-Ohio-649, at ¶ 4.

{¶66} "In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law." *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, ¶ 18. "[T]he statutory privilege governs communications directly between an attorney and a client." *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, ¶ 7. It does not apply to communications beyond testimonial speech or between clients and agents of an attorney. *See State ex rel. Dawson v. Bloom-Carroll Local Sch. Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, ¶ 27; *State v. McDermott*, 72 Ohio St.3d 570, 574 (1995). Instead, the common law privilege applies in those instances and "protects against any dissemination of information obtained in the confidential relationship." *American Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 348 (1991). Appellants only argue that the common law privilege applies here. Consequently, we need not analyze the statutory privilege.

{¶67} The attorney-client privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

> Under the [common law] attorney-client privilege, "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived."

*State ex rel. Leslie* at ¶ 21, quoting *Reed v. Baxter*, 134 F.3d 351, 355-356 (6th Cir.1998). The "privilege 'does not require the communication to contain purely legal analysis or advice to be privileged. Instead, if a communication between a lawyer and client would facilitate the

rendition of legal services or advice, the communication is privileged.'" *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, ¶ 27, quoting *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir.1991). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, ¶ 16, quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

**{¶68}** "[T]he party seeking protection under the [attorney-client] privilege carries the burden of establishing the existence of that privilege." *Nageotte v. Boston Mills Brandywine Ski Resort*, 9th Dist. Summit No. 26563, 2012-Ohio-6102, ¶ 8, quoting *Perfection Corp. v. Travelers Cas. & Sur.*, 153 Ohio App.3d 28, 2003-Ohio-2750, ¶ 12 (8th Dist.). Appellants argue that documents #184, #189, #191, and #193 are privileged because they reference "the activities or contain[] requests and communications between the Legal Department that gives legal advice to Watchtower and local elders such as [] West Congregation Elders after they received notice of McFarland's allegations of sexual abuse." According to Appellants, the attorneys in the Legal Department function as in-house counsel for the religious organization, so the confidential communications that elders have with those attorneys are privileged.

**{¶69}** None of the four documents at issue here involve communications either directly from or to an attorney. Three of the documents are letters from one elder or set of elders to another elder or set of elders. The fourth is a memorandum from an elder in the Service Department. Appellants argue that the documents are privileged because the attorney-client privilege protects "communications between an organization and its in-house legal department." *See Upjohn Co. v. United States*, 449 U.S. 383 (1981). The documents, however, are not

communications between members of an organization and its in-house counsel. They are strictly communications between members. Appellants have not addressed the issue of whether the attorney-client privilege protects communications between members of the same organization when those communications do not involve an attorney. *See Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209, 215 (2001) (attorney-client privilege did not apply to communications between two employees where organization's attorney was "not involved in these communications on the issue in question.").

{¶70} As the parties seeking to assert the privilege here, Appellants bore the burden of establishing its existence. *See Nageotte* at ¶ 8, quoting *Perfection Corp.* at ¶ 12. Appellants have not shown that the four documents at issue here constitute confidential communications between a client and attorney made for the purpose of securing legal advice. *See State ex rel. Leslie*, 105 Ohio St.3d 261, 2005-Ohio-1508, at ¶ 21, quoting *Reed*, 134 F.3d at 355-356. Nor have they shown that the communications "would facilitate the rendition of legal services or advice * * *." *State ex rel. Toledo Blade Co.*, 121 Ohio St.3d 537, 2009-Ohio-1767, at ¶ 27, quoting *Dunn*, 927 F.2d at 875. The four documents here reference contact with the Legal Department either having been made or not made and outline certain facts. *See Upjohn Co.*, 449 U.S. at 395-396, quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (1962) ("[T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing."). *See also State v. Mitchell*, 9th Dist. Summit No. 17029, 1995 WL 678624, *9 (Nov. 15, 1995) ("The mere fact that a meeting occurred, or did not occur, does not constitute a 'communication' for purposes of the attorney-client privilege."); *State v. Smith*, 9th Dist. Summit No. 13730, 1989 WL 28698, *3 (Mar. 29, 1989) (attorney permitted to testify regarding her "unsuccessful

attempts to contact [the defendant] to remind him of his trial date"). The case law upon which Appellants rely does not resolve the issue on appeal. *See* App.R. 16(A)(7). Because Appellants have not shown that the attorney-client privilege applies to the four documents at issue here, we reject their argument that the trial court erred by granting McFarland's motion to compel. *See Nageotte* at ¶ 8, quoting *Perfection Corp.* at ¶ 12. Consequently, Appellants' second assignment of error is overruled.

## III

**{¶71}** Appellants' first assignment of error is sustained with respect to documents #183, #185, #186, and #187. Appellants need not produce those four documents. Appellants' first assignment of error is overruled with respect to the remaining documents. Additionally, Appellants' second assignment of error is overruled. Appellants must produce the Bodies of Elders letters as well as documents #184 and #188 through #197. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

AMANDA MARTINSEK and MARQUETTES D. ROBINSON, Attorneys at Law, for Appellants.

FRANCIS J. MCNAMARA, Attorney at Law, for Appellants.

KONRAD KIRCHER, Attorney at Law, for Appellee.

IRWIN M. ZALKIN and DEVIN M. STOREY, Attorneys at Law, for Appellee.