[Cite as *Smith v. Ohio State Univ. Office of Compliance & Integrity*, 2022-Ohio-2659.]

| | |
|---|---|
| SCOTT ELLIOT SMITH | Case No. 2021-00400PQ |
| Requester | Special Master Jeff Clark |
| v. | REPORT AND RECOMMENDATION |
| OHIO STATE UNIVERSITY OFFICE OF COMPLIANCE AND INTEGRITY | |
| Respondent | |

{¶1} "In order to ensure that government performs effectively and properly, it is essential that the public be informed and therefore able to scrutinize the government's work and decisions." *Kish v. City of Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 15. "Public records are one portal through which the people observe their government, ensuring its accountability, integrity, and equity * * *." *Id.* at ¶ 16. Ohio's Public Records Act provides that upon request a public office "shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). Ohio courts construe the Act liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, ¶ 12. R.C. 2743.75 provides "an expeditious and economical procedure" to resolve public records disputes in the Court of Claims.

{¶2} On May 27, 2021, requester Scott Smith made a public records request to the Director of Public Records within respondent Ohio State University's Office of Compliance and Integrity (OSU) for

1 - All contracts or agreements with Matt Garretson and/or Wolf Garretson concerning the administration of the Strauss Individual Settlement Program (the "Settlement");

2 - All documents or communications concerning the criteria, factors, or allocation formula Matt Garretson (including Mr. Garretson himself, the firm of Wolf Garretson, and any agent or employee of Mr. Garretson and/or Wolf

Garretson) will use to determine the Individual Settlement Amounts for those that participate in the Strauss Individual Settlement Program, including but not limited to allocating award amounts within the tier range and the Extraordinary Injury Fund award;

3 - All documents authored by, or shared with, Matt Garretson (including Mr. Garretson himself, the firm of Wolf Garretson, and any agent or employee of Mr. Garretson and/or Wolf Garretson) concerning the Tier Caps (e.g., the calculation of the Tier Caps or the potential impact of the Tier Caps on reducing the tier range) for the Strauss Individual Settlement Program;

4 - All documents authored by, or shared with, Matt Garretson (including Mr. Garretson himself, the firm of Wolf Garretson, and any agent or employee of Mr. Garretson and/or Wolf Garretson) concerning the Extraordinary Injury Fund Total Cap (e.g., the calculation of the Extraordinary Injury Fund Total Cap or the potential impact of the Extraordinary Injury Fund Total Cap on reducing the Extraordinary Injury Fund Individual Range Cap) for the Strauss Individual Settlement Program[.]

(Complaint, Smith Aff., Exh. 1.) A fifth request, satisfied on June 11, 2021, is not at issue.

(Complaint at ¶ 23 n.7, Smith Aff., Exh. 4.) On June 24, 2021, OSU sent a response denying Requests Nos. 1 and 2 in their entirety, stating for each that

any records responsive to your request constitute attorney-client privileged communications and/or attorney work product, and those records are exempt from disclosure pursuant to Ohio Revised Code 149.43(A)(1)(v) (see *State ex rel. Toledo Blade v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767; *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508; *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009).

(Complaint, Smith Aff., Exh. 5.) The response also denied Requests Nos. 3 and 4 in their entirety, stating for each that

any records responsive to your request constitute attorney-client privileged communications and/or attorney work product, and those records, *to the extent they exist,* are exempt from disclosure pursuant to Ohio Revised Code 149.43(A)(1)(v) (see *State ex rel. Toledo Blade v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767; *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508; *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009).

(Emphasis added) (*Id.*)

{¶3} On July 16, 2021, Smith filed a complaint pursuant to R.C. 2743.75 alleging denial of access to public records in violation of R.C. 149.43(B). Following mediation, OSU filed a response and motion to dismiss (Response) on October 14, 2021. On November 29, 2021, Smith filed a memorandum in opposition (Reply). On January 3, 2022, OSU filed a sur-reply and filed one withheld record under seal. On January 10, 2022, Smith filed a response to the sur-reply. On January 12, 2022, OSU filed a reply to Smith's response. On February 18, 2022, OSU filed a final supplement to its response and filed additional records under seal.

**Motion to Dismiss**

{¶4} In order to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the claimant can prove no set of facts warranting relief after all factual allegations of the complaint are presumed true and all reasonable inferences are made in claimant's favor. *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d 580, 581, 669 N.E.2d 835 (1996). As long as there is a set of facts consistent with the complaint that would allow the claimant to recover, dismissal for failure to state a claim is not proper. *State ex rel. V.K.B. v. Smith*, 138 Ohio St.3d 84, 2013-Ohio-5477, 3 N.E.3d 1184, ¶ 10.

{¶5} OSU asserts the requested records are exempt in their entirety by application of 1) the attorney-client privilege, 2) the trial preparation records exemption, 3) the attorney work-product doctrine, 4) the non-testifying consultant privilege, and 5) Rule 1.6 of the Ohio Rules of Professional Conduct. On consideration, the Special Master finds none of these defenses are conclusively shown on the face of the complaint. Moreover, as the matter is now fully briefed these grounds are subsumed in the arguments to deny the claim on the merits. It is therefore recommended the motion to dismiss be denied.

{¶6} The parties write at length about the purpose of these requests and the status and conduct of related federal litigation. This information is irrelevant since a person may

request public records for use in civil litigation without explaining his purpose. *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 8-10; R.C. 149.43(B)(4). Accord *State ex rel. Carr v. London Corr. Inst.*, 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 38. The issues in this action are 1) what records responsive to the requests are in the possession or under the jurisdiction of OSU, and 2) what portions of these records fall squarely within any exception to the Act.

### Scope of Claims Before the Court

{¶7} Smith's records requests were directed only to OSU. (Complaint at ¶ 22, Smith Aff. at ¶ 4, Exh. 1.) However, the requests expressly include OSU records kept in the possession of counsel Carpenter Lipps & Leland LLP ("CLL") as an agent of the university. (Complaint at ¶ 23, fn. 5; Reply at 5; Jan. 10, 2022 Response to Sur-reply.) Within the records possessed by OSU or its counsel, Smith further clarifies that

> The Request * * * does not seek confidential documents in the exclusive possession of Garretson Wolf that OSU is not entitled to receive under the terms of the Settlement Program.

(Complaint at ¶ 26 fn. 8; Jan. 10, 2022 Response to Sur-reply), and

> The Request seeks only documents that the Independent Administrator— Mr. Matthew Garretson of consulting firm Garretson Wolf—authored or which OSU or its counsel shared with the Administrator for him to do his independent analysis, documents that the public is entitled to review. It does not seek OSU's counsel's internal drafts or documents.

(Complaint at ¶ 47.)

{¶8} In Exh. A of its sur-reply OSU describes certain responsive records, Documents 13 through 21, that were created after Smith's May 27, 2021 records request. However, public records requests are not continuing in nature, and these records are thus not before the court. *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, ¶ 29 (a requester is entitled to only such records as exist on the date of the request).

{¶9} OSU notes that Smith made a new public records request during litigation. (Feb. 18, 2022 Supp. Response at 3, Exh. B). Since this request was not made and denied prior to the complaint it is also not before the court. *See Strothers v. Norton,* 131 Ohio St.3d 359, 2012-Ohio-1007, 965 N.E.2d 282, ¶ 14; *State ex rel. Bardwell v. Ohio Atty. Gen.*, 181 Ohio App.3d 661, 2009-Ohio-1265, 910 N.E.2d 504, ¶ 5 (10th Dist.).

**Initial Burden of Proof**

{¶10} The overall burden of persuasion is on the requester to prove his right to relief by the requisite quantum of evidence. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office,* 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 34. First, the requester must prove that he sought an identifiable public record, and that the public office did not make the record available. *Id.* at ¶ 33. R.C. 149.43(A)(1) defines "public record" as "records kept by any public office, including * * * state * * * units." The definition of "'[r]ecords' includes any document * * * created or received by or coming under the jurisdiction of any public office * * * [that] serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G). OSU does not dispute that Smith's requests reasonably identify records of the office. OSU further states that it has denied production of all records other than as disclosed on its public website. (Response at 3-4, Barthel Aff. at ¶ 6, Exh. A.)

**Responsive Records in CLL's Possession are Public Records of OSU
by Either Direct Agency, or Under the Quasi-Agency Test**

{¶11} The Strauss Individual Settlement Program is OSU's responsibility, and thus "Ohio State necessarily approved the parameters of the final version of the Program Documents that were publicly posted [online]." (Sur-reply, Barthel Aff. at ¶ 8.) However, OSU delegated the design and drafting of the Program Documents to various agents. "CLL was appointed by the Ohio Attorney General's Office to serve as Special Counsel" (Response, Barthel Aff. at ¶ 2) to represent OSU in "settling the litigation against it." (Sur-reply at 5, Barthel Aff. at ¶ 1, 8-10.) In performing this fiduciary role, CLL served at OSU's

direction and on OSU's behalf. CLL was tasked with designing the Strauss Individual Settlement Program.

{¶12} In turn, CLL retained attorney Matt Garretson and Wolf Garretson LLC ("WG") "to assist CLL regarding the design of the Program and to independently administer the Program." (Response at 13, Barthel Aff. at ¶ 5; Sur-reply, Barthel Aff. at ¶ 8.) Because CLL was acting as an agent and not the principal for this duty, it is also correct to say that "*OSU has retained* the services of Matthew Garretson to independently administer the Program." (Emphasis added.) (Response, Exh. A *Program Description* at OSU-000008, -000035, and -000065.) Regardless of what obligations WG did or did not owe directly to OSU in the program design role, the actions of CLL in designing and drafting the Program are imputed to and have been approved by its principal, OSU.

{¶13} OSU has a legal duty to produce public records upon request. R.C. 149.43(B)(1). Production of documents which a client can be compelled to give up cannot be evaded by storing them in the hands of legal counsel. *In re Tichy*, 161 Ohio St. 104, 114, 118 N.E.2d 128, 53 Ohio Op. 35 (1954). As a long-standing principle of public records law,

> Government entities cannot conceal public records by delegating a public duty to a private entity. *State ex rel. Gannett Satellite Info. Network v. Shirey* (1997), 78 Ohio St.3d 400, 404, 678 N.E.2d 557, 561. The preparation of the settlement agreement by the attorney for the county's insurer, who is representing the county and its employees in the lawsuit, constitutes a public duty performed by the county's agent. *See, e.g., State ex rel. Mazzaro v. Ferguson* (1990), 49 Ohio St.3d 37, 550 N.E.2d 464; *see, also, Daily Gazette* 177 W.Va. at 117, 350 S.E.2d at 744, fn. 5 ("Preparation of a writing, such as a litigation settlement document, by an attorney for a public body or by an attorney for a public body's insurer is viewed as preparation by the public body for the purpose of [the State Freedom of Information Act]. Otherwise a public body could thwart disclosure under the State FOIA by having an attorney or an insurer's attorney prepare every writing which the public body wishes to keep confidential.").

*State ex rel. Findlay Publ. Co. v. Hancock County Bd. of Commrs.,* 80 Ohio St.3d 134, 137-138, 684 N.E.2d 1222 (1997). It is irrelevant whether the attorney/agent holding a public office's records is outside counsel, in-house counsel, or statutory counsel.[1]

{¶14} Even if OSU's and CLL's relationship were not one of principal and agent, OSU would have a duty to produce these records under the principle of quasi-agency:

> The quasi-agency theory applies when "'(1) a private entity prepares records in order to carry out a public office's responsibilities, (2) the public office is able to monitor the private entity's performance, and (3) the public office has access to the records for this purpose.'" [*State ex rel. Am. Civ. Liberties Union of Ohio v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553], at ¶ 53, quoting *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990). *The caselaw demonstrates, however, that when a requester has adequately proved the first prong of the quasi-agency test, the requester has met his burden:* **proof of a delegated public duty establishes that the documents relating to the delegated functions are public records**.

(Emphasis added.) *State ex rel. Armatas v. Plain Twp. Bd. of Trs.*, 163 Ohio St. 3d 304, 2021-Ohio-1176, 170 N.E.3d19, ¶ 16, 18. For clarity as to whether the Settlement Program was a public duty: If OSU had designed and drafted the Settlement Program without using third-party agents, the Consultation Agreement and communications with WG to draft the application forms and Program Documents would all clearly be subject to the Public Records Act. See *State ex rel. Gannett Satellite Info. Network v. Shirey*, 78 Ohio St.3d 400, 403, 678 N.E.2d 557 (1997). The Supreme Court has now simplified the quasi-agency principle to this single prong: Did a private entity prepare records in order to carry out a public office's responsibilities, i.e., do the records relate to delegation of a public duty? *Armatas* at ¶ 16, 22. Here, CLL prepared records in order to carry out OSU's responsibility to take appropriate and necessary action to protect the public interest when sued, including retaining and monitoring the performance of legal counsel. *Id.* at ¶ 20, 24.

---

[1] See R.C. 109.07 *Special counsel* and R.C. 109.02 [Attorney General's] *Duties as chief law officer*.

{¶15} The quasi-agency test no longer requires evidence of the office's ability to monitor the third party's performance or access records for that purpose. *Id.* at ¶ 17-18. Regardless, and although it asserts that records other than the Consulting Agreement "are exclusively in CLL's, not Ohio State's possession" (Response at 6, fn. 2), OSU demonstrated access by retrieving and filing the records. In response to the court's direct question of the extent to which "OSU is and has been able to monitor CLL's and Garretson's performance" (Dec. 8, 2021 Order, Request 3(b)) OSU argued at length that it did not monitor Garretson. However, OSU did not deny that it monitored CLL and could access records, responding only that "Ohio State and CLL have an attorney-client relationship." (Sur-reply, Barthel Aff. at ¶ 9.)

{¶16} Note that because CLL was an agent creating records on OSU's behalf, Smith could have directed a request for these records to CLL instead of or in addition to OSU. However, a public office in these circumstances is required to retrieve its public records from the agent so that the requester need not deal with private third parties. *State ex rel. Cincinnati Enquirer v. Krings*, 93 Ohio St.3d 654, 659, 758 N.E.2d 1135 (2001); *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990).

{¶17} The Special Master concludes that the withheld records were prepared to carry out OSU's responsibility to resolve the claims of Strauss survivors against it. Under either direct agency or the principle of quasi-agency they are public records of OSU – unless any portion is subject to a valid public records exception.

**Claimed Exceptions**

Burden of Proof

{¶18} "[T]he custodian has the burden to establish the applicability of an exception." *State ex rel. Pietrangelo v. Avon Lake*, 146 Ohio St.3d 292, 2016-Ohio-2974, 55 N.E.3d 1091, ¶ 2, 9 (attorney-client privilege and attorney work-product doctrine). All exceptions to disclosure are strictly construed against the public-records custodian. *State ex rel. Rogers v. Dept. of Rehab. & Corr.,* 155 Ohio St.3d 545, 2018-Ohio-5111, 122

N.E.3d 1208, ¶ 7. To meet its burden, the records custodian must prove that the requested records "fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 10. Any doubt should be resolved in favor of disclosure. *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 169, 637 N.E.2d 911 (1994). Regarding the level of proof required:

> When a public office or records custodian relies on an exemption the application of which is not apparent just from the record itself, the office must provide evidence to support the applicability of the exemption. *See, e.g., State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 401-402, 2000-Ohio-207, 732 N.E.2d 373 (2000).

*Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St. 3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 30, 35, 50. Of particular significance to establishing the exceptions claimed in this case,

> Conclusory statements in an affidavit that are not supported by evidence are not sufficient evidence to establish the exemption's applicability.

*Id.*

**{¶19}** As detailed below, OSU provides only conclusory assertions that the withheld records constitute attorney-client, attorney work-product, trial preparation, expert witness material, and Prof.Conduct R.1.6 material. In response to the court's invitation to produce evidence for the elements of each exception, OSU has merely repeated the text of the exceptions, none of which are apparent from the records themselves.

<u>Common Law Attorney-Client Privilege</u>

**{¶20}** "The attorney-client privilege, which covers records of communications between attorneys and their government clients pertaining to the attorneys' legal advice, is a state law prohibiting release of these records." *State ex rel. Toledo Blade Co. v. Toledo-Lucas County Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 22. An attorney's factual investigation incident to or related to legal advice that the attorney would give on an issue is covered by the privilege. *State ex rel. Lanham v. DeWine*, 135 Ohio St.3d 191, 2013-Ohio-199, 985 N.E.2d 467, ¶ 30. The attorney-client

privilege applies to agents working on behalf of legal counsel. *State ex rel. ESPN v. Ohio State Univ., 132 Ohio St.3d 212, 2012-Ohio 2690, 970 N.E.2d 939, ¶ 38.*

{¶21} A record is not exempt merely because it is received from or sent to a public office's legal counsel. *Better Gov't Bureau v. McGraw (In re Allen)*, 106 F.3d 582, 604, (1997). Nor is content made into a privileged communication merely because an attorney labels it as such. *Assn. of Cleveland Fire Fighters IAFF Local 93 v. Cleveland*, 8th Dist. Cuyahoga No. 110329, 2021-Ohio-3602, ¶ 45. The proponent of attorney-client privilege must show that a communication meets all the following elements:

> "Under the attorney-client privilege, '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.'" (Citations omitted.)

*State ex rel. Leslie v. Ohio Housing Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 21. Regarding the required supporting evidence:

> **Conclusory descriptions of documents in a privilege log are insufficient** to meet the producing party's burden of establishing that the document was an attorney-client communication. *In re Search Warrant Executed at Law Offices of Stephen Garea*, 1999 U.S. App. LEXIS 3861, 1999 WL 137499, *1-*2 (6th Cir. March 5, 1999). The party asserting privilege "must make a minimal showing that the communication involved legal matters. **This showing** is not onerous and **may be satisfied by as little as a statement in the privilege log explaining the nature of the legal issue** for which advice was sought." [*In re Search Warrant Executed at Law Offices of Stephen Garea*, 1999 U.S. App. LEXIS 3861, 1999 WL 137499, *1-*2 (6th Cir. March 5, 1999)]. That showing "must provide the reviewing court with enough information for it to make a determination that the document in question was, in fact, a confidential communication involving legal advice." 1999 U.S. App. LEXIS 3861, [WL] *2.

(Emphasis added.) *Williams v. Duke Energy Corp.*, S.D.Ohio No. 1:08-CV-00046, 2014 U.S. Dist. LEXIS 109835, *14-15 (Aug. 8, 2014). *See Williamson v. Recovery Ltd. P'ship.*, S.D.Ohio No. 2:06-CV-292, 2016 U.S. Dist. LEXIS 125640, *8-10 (Sept. 15, 2016)

(proponent made only conclusory statements, rather than an actual showing, that the attorney-client privilege applied to subpoenaed documents).[2] When client communications reflect the exercise of an attorney's professional skills and judgment, or the communication would clearly facilitate the rendition of legal services or advice, then the communication is privileged. *State ex rel. Toledo Blade Co. v. Toledo-Lucas County Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 27, 31. The privilege applies only to such communications, and does not protect underlying factual information provided to the attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395-396, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

{¶22} "[T]he attorney-client privilege is destroyed by voluntary disclosure to others of the content of the statement." *State v. Post*, 32 Ohio St.3d 380, 385, 513 N.E.2d 754 (1987); *MA Equip. Leasing I, LLC v. Tilton*, 980 N.E.2d 1072, 2012-Ohio-4668, ¶ 20 (10th Dist.). Here, OSU does not explain how the application forms and Program Document drafts could reveal anything not apparent in the final documents that it has disclosed online.

{¶23} Despite repeated, detailed invitations from this court (Dec. 8, 2021 and Feb. 1, 2022 Orders), OSU has not explained the nature of any legal issue for which advice was sought while CLL and WG traded drafts of settlement application forms, FAQs, and other administrative documents. OSU does not provide any extrinsic documentary or testimonial evidence of a request for legal advice, or of delivery of legal advice. Instead, in its pleadings, affidavits and privilege logs OSU repeats bare, conclusory assertions. The mere assertion of a privilege does not shift the burden to the requester to disprove it. A requester is not required to prove that communications he is not allowed to see do not document unspecified legal advice. The burden is solely on OSU to provide the court with sufficient evidence to make a determination that any portion of a record was, in fact, a

---

[2] There is no material difference between Ohio's attorney-client privilege and the federal attorney-client privilege. *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 177 (S.D.Ohio 1993), fn.3.

confidential communication involving legal advice. *Williams v. Duke Energy Corp.*, S.D.Ohio No. 1:08-CV-00046, 2014 U.S. Dist. LEXIS 109835, *14-15 (Aug. 8, 2014).

Trial Preparation Records

As used in the exception contained in R.C. 149.43(A)(1)(g),

> "Trial preparation record" means any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney.

R.C. 149.43(A)(4). The exception must be supported by affirmative evidence:

> Material cannot be excepted from disclosure simply by an agency's broad assertion that it constitutes trial preparation records. For the trial preparation exception to apply, the records must have been "specifically compiled in reasonable anticipation" of litigation. R.C. 149.43(A)(4).

*Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 502, 589 N.E.2d 24 (1992). To determine whether a document was prepared "in anticipation of litigation," the court must evaluate "whether the document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose." (Citation omitted.) *In re Special Grand Jury Investigation*, 2019-Ohio-4014, 145 N.E.3d 1206, ¶ 13 (10th Dist.). Any doubt is resolved in favor of disclosure:

> While Ohio's public records law does not require the [alleged trial preparation] record to be compiled solely in anticipation of litigation, this court has consistently held that "* * * exceptions to disclosure enumerated in R.C. 149.43 are to be construed strictly against the custodian of public records and that all doubt should be resolved in favor of disclosure." *Lesak, supra*, at 4, 9 OBR at 54, 457 N.E. 2d at 823.

*State ex rel. Natl. Broad. Co. v. Cleveland*, 38 Ohio St.3d 79, 85, 526 N.E.2d 786 (1988). The court must make an individualized scrutiny of the records in question. *Id.*

{¶24} OSU offers no evidence that the Consulting Agreement or Settlement Program Documents were compiled *in defense of* a civil proceeding. The record shows only that they were compiled to determine settlement amounts for Strauss victims who had elected to conclude their civil proceedings.

Attorney Work Product Doctrine

> In a sense most public records involve some "work product." In the context of the Public Records Law, the infusion of the work-product concept brings more confusion, than it does guidance, to a resolution of the issues that are pivotal to the question of disclosure.

*State ex rel. Cincinnati Post v. Schweikert*, 38 Ohio St.3d 170, 173, 527 N.E.2d 1230 (1988). Public offices often utilize attorneys to create, edit, and approve non-legal writings that document policy, business transactions, personnel, and other administrative functions of the office. Such "work product" of an attorney on an office document unrelated to litigation does not remove that record from public scrutiny:

> The Public Records Act contains no exception for attorney work product, except insofar as attorney work product constitutes trial-preparation records. See *State ex rel. Dist. 1199, Health Care & Social Serv. Union, SEIU v. Gulyassy*, 107 Ohio App.3d 729, 737, 669 N.E.2d 487 (10th Dist.1995) (noting that the Public Records Act "exceptions mention attorney 'work product' only as it concerns preparation for litigation, and [mention] investigatory work product only as it concerns confidential law enforcement investigatory records").
>
> > "[T]he work product doctrine is not intended to remove public records from availability to the public merely because they are also used for litigation. Hence, Civ.R. 26(B)(3) does not authorize a governmental unit to except from R.C. 149.43 public records which are otherwise required to be made available for inspection."
>
> (Brackets sic.) *State ex rel. Parisi v. Heck*, 2d Dist. Montgomery No. 25709, 2013-Ohio-4948, ¶ 10, quoting *State v. Weir*, 10th Dist. Franklin No. 79AP-423, 1980 Ohio App. LEXIS 12266, 1980 WL 353222 (Jan. 10, 1980). Thus, the attorney-work-product privilege is not an independent basis for shielding records from disclosure under the Public Records Act.

*State ex rel. Summers v. Fox*, 163 Ohio St.3d 217, 2020-Ohio-5585, 169 N.E.3d 625, ¶ 53-55.

{¶25} In any case, coverage of the work product doctrine would not differ from the trial preparation exemption as applied to the records here. The two elements of common

law attorney work-product doctrine are: 1) the document must be a product of the respondent's attorney's mental processes, and 2) must have been made in anticipation of litigation. *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 53, ¶ 54-55. Comparing this doctrine to the statutory exemption for trial preparation records, i.e., "information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney," R.C. 149.43(A)(4), shows that the work product doctrine encompasses, if anything, less material than that covered by the trial preparation exemption. Therefore, this report will not separately analyze application of the attorney work product privilege.

<u>Non-Testifying Consultant Privilege</u>

{¶26} Title V of the Ohio Rules of Civil Procedure (Civ.R.) contains rules regulating the discovery process in civil litigation. Within Title V, Civ.R. 26(B)(7) provides:

> (B) Scope of discovery. Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows: * * *
>
> (7) Disclosure of expert testimony. * * *
>
> (h) Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.

Civ.R. 26(B)(7)(h) applies only between parties acting in the context of litigation. The rule prohibits a party "by interrogatories or deposition" from discovering facts known or opinions held by an expert retained or specially employed by another party. The Rule applies by its terms only to the use of "interrogatories or deposition" in the course of civil discovery. A public records request is neither of these.

{¶27} To clarify the relationship between public records and civil discovery, the Supreme Court holds that a requester may utilize public records requests to obtain

records of interest to him in connection with civil litigation in which he is a party. *Gilbert v. Summit County*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 8-11. *Accord State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006 Ohio 6365, 857 N.E.2d 1208, ¶ 43-45. However, such a requester remains subject to the discovery and evidentiary rules in any litigation related to the records he has obtained. See *Gilbert* at ¶ 12-13 (Lundberg Stratton, J., concurring.) Smith shares the right of every other person to access public records, but the federal *Strauss* court would still control the admissibility into evidence of any record he acquires.

{¶28} The court's Feb. 1, 2022 Order directed OSU to provide any legal authority for the proposition that Civ.R. 26(B)(7)(h) can be or has been used as a public records exception. OSU provided no such authority regarding the current Rule or its codification prior to July 1, 2020 as Civ.R. 26(B)(5)(a). OSU claims that Smith has not argued that the discovery rule cannot be a public records exception, implying waiver. (Feb. 18, 2022 Supp. at 4, 6.) But Smith does assert that Civ.R. 26(B)(7) has no application outside of discovery proceedings. (Reply at 12.) Even had Smith not challenged this defense, the burden remains on OSU to prove that the Rule can serve as an exception to the Public Records Act and that specific requested records fall squarely within the exception.

{¶29} The Special Master concludes that OSU has not met its burden to show that Civ.R. 26(B)(7)(h) may be applied as a public records exception. Further, for the same reasons noted under Trial Preparation Records, OSU has not shown that Garretson is an "expert who has been retained or specially employed * * * to prepare for trial."

<u>Rule 1.6 of the Ohio Rules of Professional Conduct</u>

Ohio R.Prof.Conduct 1.6(a) provides that:

(a) A lawyer shall not reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by division (b) or required by division (d) of this rule.

The rule applies by its terms only to the conduct of a lawyer acting in that capacity. The requests here were not directed to an attorney. OSU cannot point to an attorney who would be disciplined if OSU disclosed responsive records.

{¶30} Even had Smith directed his request to an individual attorney acting in that capacity, the Rules of Professional Conduct only "define proper conduct for purposes of professional discipline," *Id.*, SCOPE, ¶ 14, and do not apply where evidence is sought from a lawyer through compulsion of law. *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 8th Dist. Cuyahoga No. 92366, 2009-Ohio-2490, ¶ 62-69, *reversed on other grounds* 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533. *See also Pales v. Fedor*, 8th Dist. Cuyahoga No. 106024, 2018-Ohio-2056, ¶ 34 ("Prof.Cond.R. 1.6 does not define what is privileged or shield an attorney from complying with a court discovery order.")

{¶31} The court's Feb. 1, 2022 Order directed OSU to provide any legal authority for the proposition that Rule 1.6 of the Ohio Rules of Professional Conduct can constitute an exception to the Public Records Act. OSU cites no case where this Rule has been applied as a public records exception. To the extent OSU discusses rule commentary and secondary authorities, those references address the obligations of attorneys to maintain the confidentiality of client information and do not establish that information requested directly from the client is confidential just because the client's attorney created or received it.

{¶32} OSU claims that Smith has not argued that Prof.Cond.R. 1.6 cannot be an exception to the Public Records Act, implying waiver. (Feb. 18, 2022 Supp. at 4, 6.) However, Smith did note that OSU is not a lawyer subject to Prof.Conduct R.1.6. (Reply at 12.) Further, even had Smith not challenged this defense, the burden remains on OSU to prove that it cites a law that can serve as an exception to the Public Records Act, and that the requested records fall squarely within that exception. See *State ex rel. Cincinnati Enquirer v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 29 (even

where request was made to government attorney, respondent must prove that "disclosure of the requested record would expose the confidences and secrets of the [public office]"). The Rule is premised on the existence of confidential attorney-client communications or other "secrets," none of which are established in this action.

{¶33} Smith's request was made to OSU as an institution and not to an individual lawyer. The rule does not restrict a client's disclosure of information or records it is otherwise obligated to disclose. The Special Master concludes that OSU has not shown that Prof.Cond.R. 1.6 may be applied as an exception to OSU as a client agency in this action or that, even if it could, any withheld record would fall squarely within the Rule.

### Extent of Redaction

{¶34} A public office may redact from an otherwise public record only information falling squarely under an exemption. The Public Records Act provides that:

> If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt.

R.C. 149.43(B)(1). *See also Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group*, 2013-Ohio-5736, 6 N.E.3d 631, ¶ 5, 29-31 (8th Dist.), affirmed by *Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group*, 145 Ohio St.3d 446, 2016-Ohio-556, 50 N.E.3d 499, ¶ 4, 12; *State ex rel. Beacon Journal Publ. Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 13.

{¶35} Specifically, when asserting attorney-client privilege a public office must redact only the exempt portions of the record and make available all the information within the public record that is not exempt. *State ex rel. Anderson v. Vermilion*, 134 Ohio St.3d 120, 2012-Ohio-5320, 980 N.E.2d 975, ¶ 19. Nonexempt portions of an attorney communication such as the general title of the matter being handled, dates of service, financial arrangements, and the like must be disclosed. *Id.* at ¶ 15.

### Settlement Program Consulting Agreement (Agreement)

{¶36} Contracts to obtain goods or services in exchange for public monies are quintessential records documenting the activities of a public office. The Agreement is a responsive record kept in OSU's possession. (Response at 7, fn. 2.) Carpenter Lipps & Leland "as counsel for [OSU]" entered into the Agreement with Wolf Garretson LLC. (Consulting Agreement at 1; Response, Barthel Aff. at ¶ 5.) The Agreement memorializes mutual promises and covenants pertaining to services, term, and fees; treatment of information acquired by WG; communication between the contracting parties; a schedule of specific services to be rendered by WG with billing rates for named WG individuals or positions; and contractual boilerplate. (Consulting Agreement, copy filed Jan. 3, 2022 under seal.) Review of the document reveals that the Agreement sets out no legal issues for which advice is sought and does not purport to provide information that would facilitate the rendition of legal services or advice. OSU does not assert that the Agreement is itself a "factual investigation * * * incident to or related to any legal advice." *See State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 20-33. Nor is the Agreement itself a "settlement document" setting, containing, or proposing any conditions of individual or collective settlements.

{¶37} Despite the court's repeated invitations to do so (Dec. 8, 2021 and Feb. 1, 2022 Orders) OSU has provided no affidavit or explanation beyond the conclusory assertion that "[c]ontracts or agreements retaining consultants, such as the Consulting Agreement entered into between Wolf Garretson LLC and CLL, are protected by the attorney-client privilege," citing *State ex rel. ESPN v. Ohio State Univ.*, 132 Ohio St.3d 212, 2012-Ohio 2690, 970 N.E.2d 939, ¶ 38. (Response at 11.) However, *ESPN* held only that a public office was not required to produce proof of the "agreements retaining agents or joint-defense agreements with attorneys representing other clients" to establish their capacity as a legal advisor. The *ESPN* Court did not find that the retention agreement *itself* was a confidential attorney-client communication protected by the attorney-client privilege.

**{¶38}** OSU also cites *Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, *10 [*sic*, see *30-31] (S.D. Ohio Nov. 13, 2012) This case held that an outside counsel's letter retaining a third-party consultant to provide legal advice was protected by attorney-client privilege because the letter explains the consultant's role "for the purpose of providing legal advice" and included "the motive of the client in seeking representation [and] the specific nature of the services to be provided." *Id.* at *31. However, no text in the Agreement describes WG's role as providing legal advice or explains the "motives" of OSU other than its obvious and publicly expressed intent to establish a program to settle the Strauss claims. In contrast, the online Program Description at OSU-000001, 000036 and 000065 explains OSU's motives to "do the right thing for Strauss survivors," "in continuance of its efforts to restore the bond between itself and its former students and alumni who were impacted by Dr. Richard Strauss, and join them in their healing process," and continue to adhere "to its principles of transparency, integrity, and empathy." *Graff* is inapposite because the Agreement contains no discussion of "motives" or any legal issue on which advice is sought.

**{¶39}** By analogy, portions of attorney fee invoices may constitute privileged attorney-client communication. Those portions are often limited to the narrative descriptions of legal service that individually satisfy the definition of confidential attorney-client communication. *Anderson v. Vermilion*, 134 Ohio St.3d 120, 2012-Ohio-5320, 980 N.E.2d 975, ¶ 15. A contractual third-party retention agreement is likewise not privileged other than portions that individually satisfy the definition of confidential attorney-client communication.

> In general, the "fact of retainer [and] identity of the client" are not privileged, because they do not qualify as "confidential communications" made for the purpose of securing legal advice. See *United States v. Pape*, 144 F.2d 778, 782 (2d Cir.1944). "[F]ee information" is also not privileged. *In re Shargel*, 742 F.2d 61, 62 (2d Cir.1984); see *Gaus v. Conair Corp.*, No. 94 Civ. 5693 (KTD)(FM), 2000 U.S. Dist. LEXIS 4450, 2000 WL 358387, at *3 (S.D.N.Y. Apr. 7, 2000) ("The attorney-client privilege typically does not extend, however, to the identity of the client(s) or the fee arrangements that the

client(s) may have entered into with the attorney."). However, any content that "reveal[s] the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall[s] within the privilege." *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992); see *Daugerdas*, 304 F.Supp.2d at 514 (quoting *Clarke* for the standard used in determining whether attorney invoices to a client were privileged).

Here, the content of the draft engagement letters consists mainly of the proposed fee arrangement for Farkas, along with boilerplate termination and arbitration provisions. (See MFM 5373-75; MFM 5493-5501.) The letters also identify the broad purpose of Farkas's representation as "negotiat[ing] a financial settlement of on-going disputes involving the CAM-NewMarkets joint venture," and note the "short time schedule" involved. (*See id.*) None of these statements contain legal advice. Nor do they reveal undisclosed motive, strategy, or the nature of the services provided. See *Daugerdas*, 304 F.Supp.2d at 514 (noting that because invoices did not contain "details regarding the nature of the legal services provided," they were "not privileged"). To the extent that they identify the motive for retaining Farkas to be enforcing NMP's legal rights under the JV Agreement against CAM, through litigation or negotiation, Plaintiffs have already disclosed this goal in their Amended Complaint. (See Am. Compl. P 12 (discussing "legal action to enforce NMP's rights . . . against CAM, Oppenheim and BVT").)

*Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 100-101 (S.D.N.Y.2009). OSU has offered no evidence that any portion of the Agreement meets the definition of confidential attorney-client communication. Finally, comparison of the Agreement with the online Program Description (https://StraussIndividualSettlement Program.com) shows that substantially all the terms of the Agreement have been disclosed to the public.

{¶40} With respect to the Agreement as a "trial preparation record," OSU fails to identify any specific portion containing "the independent thought processes and personal trial preparation of an attorney." Nor does it explain how the Agreement is intended to, or could be, used at trial. On review, the Agreement is merely a contract setting out the terms of employment for design and operation of a settlement program, with no intended use in the trial of the Strauss claims.

{¶41} The Special Master concludes that OSU fails to meet its burden to prove that any portion of the Consulting Agreement falls squarely within the definition of either confidential attorney-client communication or trial preparation record.

### Communications and Attached Draft Settlement Program Records

{¶42} OSU filed documents under seal in response to an order for "[c]omplete and unredacted copies of all records responsive to Requests Nos. 1, 2, 3 and 4 * * *." (February 1, 2022 Order at ¶ 1.) Review *in camera* confirms that the withheld emails and Program Document drafts[3] are documents coming under OSU's jurisdiction that serve to document OSU's "functions, policies, decisions, procedures, operations, or other activities" in developing a settlement program. R.C. 143.011(G).

{¶43} Using the labels of the electronic files as submitted under seal, review *in camera* shows that the communication records consist of the following:

| File | Pages | Content | A/C Privilege | Trial Preparation |
|---|---|---|---|---|
| 16. Re_Claim Form | 000080 - 000082 | Emails scheduling phone calls, and cover email for draft claim form. | No | No |
| | 000083 - 000093 | Draft claim form. | No | No |
| 26. Re_OSU Program | 000094 | Email noting claim form proofing, web site styling, and release timing. | No | No |
| 27. Claim Form – Confidential_Privileged | 000095 | Cover email for revised claim form, posting question. | No | No |

---

[3] "Records" includes preliminary work product and drafts kept by the office, no matter how slightly draft versions may differ. *State ex rel. Carr v. London Corr. Inst.*, 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 37; *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 20, 27.

| | 000095-97 | Other emails identical to 000080 - 000082 | No | No |
|---|---|---|---|---|
| | 000098 - 000108 | Draft claim form | No | No |
| 28. Strauss Individual Settlement Program – Program Documents | 000109 | Cover email for draft program documents | No | No |
| | 000109 - 000141 | Draft program documents (FAQs, program protocol, and release) | No | No |
| 32. Re Strauss Individual Settlement Program – Program Docume [*sic*] | 000142 | Email suggesting wording change to draft document. | No | No |
| | 000142 - 000143 | Email w/recipients and content identical to 000109. | No | No |
| 37. Re Strauss Individual Settlement Program – Program Docume [*sic*] | 000144 - 000147 | Emails re: timing; web color scheme, changes to draft document format, wording, structure, and placement; scheduling phone call. | No | No |
| | 000147 – 000148 | Email identical to 000109. | No | No |
| 38. Re Strauss Individual Settlement Program – Program Docume [*sic*] | 000149 – 000150 | Cover email for draft program documents with description of style, format, and wording changes to the drafts. | No | No |

| | 000150 – 000154 | Emails identical to 000144 – 000147. | No | No |
|---|---|---|---|---|
| | 000155 - 000236 | Draft program documents. | No | No |
| 39. Re Strauss Individual Settlement Program – Program Docume [*sic*] | 000237 | Cover email for updated claim form. | No | No |
| | 000237 – 000243 | Emails identical to 000149 – 000154. | No | No |
| | 000244 - 00254 | Updated claim form. | No | No |
| 43. Re Strauss Individual Settlement Program – Program Docume [*sic*] | 000255 – 000256 | Emails regarding wording changes and typo corrections to documents. | No | No |
| | 000256 - 000262 | Emails identical to 000149 – 000154. | No | No |
| 49. Re Strauss Individual Settlement Program – Program Docume [*sic*] | 000263 – 000265 | Emails re: wording changes to draft documents, web links, and launch timing. | No | No |
| | 000265 - 000273 | Emails identical to 000255 – 000262. | No | No |
| 51. Re Strauss Individual Settlement Program (Privileged Atto [*sic*] | 000274 | Emails authorizing and reporting status of web site. | No | No |

**No Email or Attachment is Shown to Contain Confidential Attorney-Client Communication**

{¶44} The header and signature blocks of email between client and counsel rarely if ever contain confidential attorney-client communication because

> [t]he privilege does not apply to the fact of communication between a client and attorney. It is the substance of the communication which is protected, not the fact that there has been communication. *United States v. Kendrick*, 331 F.2d 110, 113 (4th Cir. 1964); *Howell v. United States*, 442 F.2d 265 (7th Cir. 1971).

*Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484. The fact of a meeting or planning to meet with one's attorney is likewise not privileged: "The mere fact that a meeting occurred, or did not occur, does not constitute a 'communication' for purposes of the attorney-client privilege." *McFarland v. West Congregation of Jehovah's Witnesses, Lorain, OH, Inc.*, 2016-Ohio-5462, 60 N.E.3d 39, ¶ 70 (9th Dist.) *citing State v. Mitchell*, 9th Dist. Summit No. 17029, 1995 Ohio App. LEXIS 5071, *23, 1995 WL 678624, *9 (November 15, 1995); *Cincinnati Enquirer v. Hamilton Cty. Bd. of Commrs.*, Ct. of Cl. No. 2019-00789, 2020-Ohio-4856, ¶ 27. *Accord: In re Motor Fuel Temperature Sales Practices Litig.,* D.Kan. No. 07-MD-1840-KHV, 2010 U.S. Dist. LEXIS 146815, *77 (Nov. 8, 2010) (arranging conference calls and meetings); *Ullmann v. State*, 230 Conn. 698, 712, 647 A.2d 324 (1994). Nearly all the withheld emails merely arrange phone calls, distribute draft documents, and otherwise deal with administrative matters.

{¶45} OSU asserts that the requests for the communications require disclosure of "materials related to settlement *analysis and considerations*" (Response at 6) but points to no specific record and provides no explanation of the legal nature of any "analysis" or identify what specific matters were "considered." Nor is any exchange of *legal* analysis and considerations apparent on review of the draft documents and cover emails *in camera*. OSU asks the court to assume that because those drafting the program materials were attorneys, the editing process must have involved legal issues (which it declines to identify). However, "an assumption does not rise to the level of clear and convincing proof necessary to apply an exception to the Public Records Act." (Citation omitted.) *State ex rel. Summers v. Fox,* 163 Ohio St.3d 217, 2020-Ohio-5585, 169 N.E.3d 625, ¶ 33. For example, a privacy policy is part of the Strauss Claim Form drafts and final product. OSU

could have, but has not, explained the nature of any privacy issue requiring legal analysis, and how any particular draft revealed the request for or provision of legal advice on that issue. Instead, no legal issue is apparent just on the face of the claim form or other program document drafts. OSU has not provided any evidence that its attorneys and consultant were communicating legal advice. *Id.* at ¶ 86.

{¶46} An example of sufficient proof of privileged communication is found in *State ex rel. Toledo Blade Co. v. Toledo-Lucas County Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, where an office used an attorney to investigate factual and legal issues concerning allegations that its president had committed improper or illegal acts. *Id.* at ¶ 4, 29. The office submitted affidavits from both its board chairman and the attorney that identified the nature of specific issues on which legal advice was provided. The Court perceived the legal analysis where it was integrated in the resulting report:

> Both the port authority and its outside counsel knew that the investigation was replete with various legal issues and consequences that would be better resolved by the port authority's employing its long-time attorney to conduct the investigation and prepare the report. Legal issues included interpretation of Hartung's employment contract, an analysis of ethics law and criminal law, potential tort claims by Hartung and Teigland, and the construction of a confidentiality provision in the settlement agreement concerning a previous port authority investigation. Legal analysis related to the facts in the investigation is integrated throughout the report.

(*Id.* at ¶ 29.) OSU's pleadings and affidavits provide no comparable testimony or documentation.

{¶47} The courts recognize that supporting background and explanation are necessary where the text of communications do not relate on their face to legal advice. To that end, the Special Master invited OSU to submit specific support for the assertion of attorney-client privilege. However, OSU failed to provide any evidence that OSU, its attorneys, or the consultant actually sought or rendered legal advice, or that any specific communication reflected the attorneys' "professional skills and judgment." *Id.* at ¶ 27, 31. The withheld communications between legal counsel and the consultant reflect only the

drafting and online posting of a settlement application form and related materials that do not obviously involve their professional legal services. *See Williams v. Duke Energy Corp.,* S.D.Ohio No. 1:08-CV-00046, 2014 U.S. Dist. LEXIS 109835, *15-16 (Aug. 8, 2014).

> Communications to a lawyer for business purposes are not privileged. Documents prepared and emailed for review by both legal and nonlegal employees are often held to be not privileged because the communications were not made for the primary purpose of seeking legal advice. *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 514 (M.D. N.C. 1986). Documents whose "primary purpose" was "business negotiations" rather than "legal advice" are not privileged. *United States v. Davis*, 131 F.R.D. 391, 401 (S.D. N.Y. 1990).

*Id.* at *8 (see *41-88 for application to case documents including email).

**{¶48}** The Special Master finds that OSU's assertions of attorney-client privilege are based solely on conclusory descriptions and statements. Neither the affidavits nor the privilege log meets OSU's minimal burden to identify and explain the nature of any legal issue upon which advice was sought or provided through a specifically identified communication or attachment.

### No Proof that any Email or Attachment is a Trial Preparation Record

**{¶49}** OSU provides only conclusory assertions that the trial preparation exception applies to any email or draft settlement program document. OSU fails to identify any specific portion of the records containing "the independent thought processes and personal trial preparation of an attorney." Nor does it explain how any of the drafts or cover communications are used to prepare for trial. It is well-established that settlement proposals and agreements are not "records compiled in anticipation of or in defense of a lawsuit. It simply does not prepare one for trial." *State ex rel. Cincinnati Enquirer v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 18, citing *State ex rel. Kinsley v. Berea Bd. of Edn.* (1990), 64 Ohio App.3d 659, 663, 582 N.E.2d 653, 7 Anderson's Ohio App. Cas. 318. Even more broadly,

There is no specific exemption for documents provided to a public office to negotiate the settlement of a potential lawsuit or for settlement proposals before a final settlement agreement is reached. If the General Assembly had so intended, it would have specifically provided such an exemption.

*Dupuis* at ¶ 21.[4]

{¶50} In holding that that settlement agreements entered into by a governmental unit are not trial preparation records pursuant to R.C. 149.43(A)(4), the Eighth District recognized that "courts in other states have found no valid reason for secreting documents which designate how tax dollars are spent * * * by public bodies to settle disputes." (Citations omitted.) *Kinsley, supra.* Drafts of the application form and other Strauss Individual Settlement Program records designating how OSU settlement funds would be spent are even further removed from "trial preparation" than the actual negotiation or conclusion of settlements, both of which are public. The Special Master concludes that OSU fails to show that any communication record or attachment filed under seal falls squarely within the definition of trial preparation records contained in R.C. 149.43(A)(4).

### Unspecified Privacy Exemption

{¶51} Without claiming any statutory, constitutional, or other established privacy exemption, OSU warns that "[t]hrough his public records request and complaint, Mr. Smith is asking the Court to order the public disclosure of sensitive, private, confidential information related to sexual abuse victims." (Sur-reply at 2.) This statement is belied by Smith's clear caveat that he seeks no information in the sole possession of Garretson, and no information that would disclose the identities of sexual assault victims. (Complaint at ¶ 23, fn. 7.; Jan. 10, 2022 Response to Sur-reply). OSU notes that Garretson is prohibited from sharing any confidential information with OSU. (Response, Exh. A at

---

[4] Even between parties in litigation, there appears to be "no Ohio statute or case law that expressly creates a 'settlement privilege' pertaining to information sought at the discovery stage." *Ohio Consumers' Counsel v. PUC*, 111 Ohio St. 3d 300, 2006-Ohio-5789, 856 N.E.213, ¶ 92.

OSU-000016, -026, -033, -036-037, -054). On review, the only records at issue – those that OSU filed under seal – contain no sensitive information related to sexual abuse victims either individually or collectively. They do not document WG's later operation and administration of Settlement Program, only the process of drafting the application form and other program documents with CLL. They contain no private information about victims, or any confidential information about victims. Although the records under seal are Bates-stamped for ready reference, OSU does not identify the page number of any communication allegedly containing "sensitive, private, [or] confidential information related to sexual abuse victims."

**Conclusion**

{¶52} On consideration of the pleadings, attachments, and responsive records filed under seal, the Special Master recommends the court issue an order granting the claim for production of all withheld records filed under seal. It is recommended the court order that requester is entitled to recover from respondent the costs associated with this action that he has incurred, including the twenty-five-dollar filing fee. R.C. 2743.75(F)(3)(b). The statute precludes the requested award of attorney fees.

{¶53} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFF CLARK
Special Master

**Filed May 12, 2022**
**Sent to S.C. Reporter 8/4/22**